AEE

FILED
FEBRUARY 8, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

08 C 868

LORETTA SCOTT AND PEARLEATHA SCOTT,

Plaintiffs on behalf of themselves and others similarly situated,

v.

THORNCREEK APARTMENTS II, LLC D/B/A THE LOFTS AT THORNCREEK and THORNCREEK MANAGEMENT, LLC,

Defendants.

Case No.______________

Hon.____________________

JUDGE ANDERSEN
MAGISTRATE JUDGE COX

**DEFENDANTS' NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1441 AND 1446**

Defendants, Thorncreek Apartments II, LLC d/b/a the Lofts at Thorncreek and Thorncreek Management, LLC (collectively "Defendants"), pursuant to 28 U.S.C. §§ 1441 and 1446, hereby provide the Clerk of this Court and other interested parties notice that Defendants seek to remove an action originally filed in the Circuit Court of Cook County, Illinois, Chancery Division, Case Number 8CH00274, to the United States District Court for the Northern District of Illinois, Eastern Division. The grounds are as follows:

1. Under 28 U.S.C. § 1441(a), "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

2. Plaintiff's complaint purports to be a class action. Under 28 U.S.C. § 1332(d)(2), "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a



1623835.1

class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ."

3. Under 28 U.S.C. § 1453(b), "A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446 (b) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants."

4. The claims stated in Plaintiff's Complaint are ones over which this Court would have original jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a civil case where: (i) a member of Plaintiff's class is a citizen of a state different from a Defendant; and (ii) the matter in controversy reasonably may be in excess of the sum or value of $5,000,000.00.

a. **Diversity**. According to the Complaint: (i) the Plaintiffs, the Scotts, reside in the Village of Park Forest, Illinois. Complaint, ¶3; and (ii) Defendant Thorncreek Apartments, II LLC is a Michigan corporation with its place of business in Farmington Hills, Michigan. Complaint, ¶4. Also, Defendant Thorncreek Management, LLC is a limited liability company organized under the laws of the State of Michigan with its principal offices in Farmington Hills, Michigan. As such, a "member of a class of plaintiffs is a citizen of a State different from any defendant" for purposes of 28 U.S.C. § 1332(d)(2)(A).

b. **Amount in Controversy**. According to Count I of the Complaint, Plaintiffs, on behalf of themselves and on behalf of some 190 renters at Thorncreek Apartments, seek statutory money damages (which, by statute, provides for costs and attorney fees) for Defendants' alleged failure to pay up to six years' worth of interest on security deposits.

According to Count II of the Complaint, Plaintiffs, on behalf of themselves and

on behalf of between 50 and 190 renters at Thorncreek Apartments, seek money damages for alleged improper rent increases in violation of leases.

According to Count III, Plaintiffs allege, on behalf of themselves and on behalf of between 100 and 190 renters at Thorncreek Apartments, that Defendants systemically breached warranties of habitability, alleging floodings, leaks in floor foundations, an untold amount of soaked possessions, resulting in total losses, black mold in basements, and that the homes and common areas are in dilapidated and uninhabitable states. Complaint, ¶¶ 29-31, 71. The allegations are that these issues have persisted for five years. Complaint, ¶74. Plaintiffs seek damages flowing from the above alleged actions.

Plaintiffs also seek a class-wide injunction to remediate all alleged breaches of warranty and seek the appointment of a receiver to ensure that no such breaches of warranty occur in the future. Injunctive relief in the form of systemic clean-up, upgrades, and renovations to each of the units in the form Plaintiffs seek would require tearing down the units and building new ones, all the while displacing residents, which would make the complex unprofitable. The appointment of a receiver would impose significant burdens on the management of the property.

Plaintiffs' alleged statutory and breach of contract damages, along with damages as a result of breach of warranty, and Defendants damages as a result of the injunction would exceed $5,000,000.00.

Circuit precedent allows the Court to consider the damages a plaintiff seeks but also the damages that would flow to defendant if an injunction were to issue. *See McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 395 (7th Cir., 1979). This is also true when class plaintiffs are involved when the interest of the class is common and undivided interests. *See Loizon v. SMH Societe Suisse de Microelectronics, Et Horologerie SA*, 950 F.Supp. 250 (N.D.Ill., 1996). Here,

the Plaintiffs stipulate that all of their claims are common and the differences between the individual class members are minor, Complaint, ¶¶ 53-59; 63-69; 72-78, as "common issues predominate over any issues involving only individual class members." Complaint, ¶¶ 75; *see also* ¶¶ 57, 67.

5. This notice is timely filed within thirty days after Defendants received the State Court pleadings.

6. Venue is proper in the North District of Illinois, Eastern Division, as the venue from which this action is removed is in Chicago, Illinois, which is within this District and Division.

7. Attached hereto are copies of all process, pleadings, and orders served upon Defendants in the State Court action.

Wherefore, Defendants pray that this action be removed to this Court and that this Court accept jurisdiction; and henceforth, place this action on this Court's docket for all further proceedings, the same as though this action had originally been instituted in this Court. Defendants request the entry of such orders to effectuate removal.

Respectfully submitted,

JENNER & BLOCK, LLP

BY: /s/ Philip L. Harris

Lisa T. Scruggs
Philip L. Harris
Ryan K. Harding
330 N. Wabash Avenue
Chicago, IL 60611-7603
312.840.8681
312.840.8781 (facsimile)
Attorneys and co-counsel for Defendants

SICILIANO MYCHALOWYCH
VAN DUSEN AND FEUL, PLC

By: /s/ Andrew W. Mychalowych

Andrew W. Mychalowych
(Michigan Bar No. 39602)
Lindsay James (Michigan Bar No. 66778)
37000 Grand River Avenue, Suite 350
Farmington Hills, MI 48335
248.442.0510
248.442.0518 (facsimile)
Attorneys for Defendants

Dated: February 8, 2008

## CERTIFICATE OF SERVICE

On February 8, 2008, I served **Defendants' Notice of Removal Pursuant to 28 U.S.C. §§ 1441and 1446**, by U.S. Mail, postage prepaid, to:

Daniel A. Edelman
Edelman, Combs, Latturner & Goodwin, LLC
Daniel A. Edelman, Esq.
120 South LaSalle Street, 18th Floor
Chicago, IL 60603

/s/ Ryan K. Harding
Ryan K. Harding

2120 - Served
2220 - Not Served
2320 - Served By Mail
2420 - Served By Publication
SUMMONS

2121 - Served
2221 - Not Served
2321 - Served By Mail
2421 - Served By Publication
ALIAS - SUMMONS

CCG N001-10M-1-07-05 ( )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

(Name all parties)

Loretta Scott and Pearleatha Scott

v.

Thorncreek Apartments II, LLC, d/b/a The Lofts at Thorncreek and Thorncreek Management, LLC

08CH00274

No. ____________

Thorncreek Apartments II, LLC
c/o Registered Agent
Michael E. Ross
222 N LaSalle St, STE 1910
Chicago, IL 60601

SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, JAN 3 2008

DOROTHY BROWN

Clerk of Court

Atty. No.: 41106
Name: Edelman, Combs, Latturner & Goodwin LLC
Atty. for: Plaintiff
Address: 120 S. LaSalle St. 18th Fl.
City/State/Zip: Chicago, IL 60603
Telephone: (312) 739-4200

Date of service: ____________, ______
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: (312) 419-0379
(Area Code) (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2120 - Served
2220 - Not Served
2320 - Served By Mail
2420 - Served By Publication
SUMMONS

2121 - Served
2221 - Not Served
2321 - Served By Mail
2421 - Served By Publication
ALIAS - SUMMONS

CCG N001-10M-1-07-05 ( )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

(Name all parties)

Loretta Scott and Pearleatha Scott

v.

Thorncreek Apartments II, LLC, d/b/a The Lofts at Thorncreek and Thorncreek Management, LLC

No. 8CH00274

Thorncreek Apartments II, LLC
c/o Registered Agent
Michael E. Ross
222 N LaSalle St, STE 1910
Chicago, IL 60601

SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, JAN 2 2008,

Clerk of Court

Atty. No.: 41106
Name: Edelman, Combs, Latturner & Goodwin LLC
Atty. for: Plaintiff
Address: 120 S. LaSalle St. 18th Fl.
City/State/Zip: Chicago, IL 60603
Telephone: (312) 739-4200

Date of service: ____________, ______
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: (312) 419-0379
(Area Code) (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Atty. No. 41106

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| LORETTA SCOTT AND PEARLEATHA SCOTT, Plaintiffs, on behalf of themselves and others similarly situated | ) | 08CH00274 |
| v. | ) | |
| THORNCREEK APARTMENTS II, LLC d/b/a/ THE LOFTS AT THORNCREEK and THORNCREEK MANAGEMENT, LLC, | ) | |
| Defendants. | ) | JURY DEMANDED |

COMPLAINT – CLASS ACTION

MATTERS COMMON TO MULTIPLE COUNTS

INTRODUCTION

1. Plaintiffs Loretta Scott and Pearleatha Scott bring this action against defendants Thorncreek Apartments II, LLC d/b/a/ The Lofts at Thorncreek and Thorncreek Management, LLC ("Defendants") to secure redress for systematic and regular violations of Illinois laws protecting tenants against abuses by landlords.

PARTIES

2. Plaintiffs Loretta Scott and Pearleatha Scott ("the Scotts" or "plaintiffs") are individuals who from June 7, 2001 to August 31, 2007 resided in a townhome complex known as The Lofts At Thorncreek in Cook County, Illinois.

3. The Scotts moved out of the townhome complex on or about August 31, 2007, and they currently live at 3012 Western Avenue in Park Forest, IL 60466.

4. Defendant Thorncreek Apartments II, LLC is a Michigan corporation. Its business address is 36700 Grand River Avenue, Farmington Hills, Michigan 48355. Its registered agent and registered office are listed as: Michael E. Ross, 222 N. LaSalle Street, Suite 1910, Chicago, Illinois 60601, which is in Cook County.

5. Thorncreek Apartments II, LLC is the current owner of record of the apartment complex in which plaintiffs lived. It has been the owner for more than twelve years under a Quit Claim Deed dated January 30, 1995. Thorncreek Apartments II, LLC does business as The Lofts at Thorncreek.

6. Thorncreek Management, LLC is the sole existing manager in Thorncreek Apartments II, LLC and directed its affairs with respect to the facts complained of here.

**FACTS**

7. The complex in which the plaintiffs resided is located around the intersection of Western Avenue and Indianwood Boulevard in Park Forest, Illinois ("complex").

8. On information and belief, the complex contains 190 separate rental units.

9. Defendants have filed more than fifty-one (51) civil eviction suits in Cook County against tenants of the complex in the past few years.

10. The Scotts have leased two different townhome units in the complex over the past six years. Each year they renewed, plaintiffs signed new written leases. Plaintiffs did not sign leases at any other time.

11. In the six years, plaintiffs have never defaulted on rent and have always

paid the full amount of the rent for each month.

12. Dinah Gonzalez was listed as the "Thorncreek managing agent" on the Scotts' sixth lease signed by the Scotts on May 30, 2006. The lease, as received by the Scotts, is attached herein as Exhibit A. This lease began on June 1, 2006 and was for 66 Indianwood Boulevard, Park Forest, Illinois.

13. Defendants did not sign the lease until June 5, 2006, which is 4 days after the start date of the lease.

14. The Scotts paid a $335 refundable security deposit. Their monthly rent was $950.00.

15. Defendants never paid the Scotts any interest on their security deposit during plaintiffs' six years of tenancy with defendants.

16. Defendants accepted plaintiffs' rent payment of $950.00 during the months of June 2007 and July 2007 and never informed plaintiffs, either orally nor in writing, that rent increased and plaintiffs were carrying a balance..

17. On or about July 31, 2007, plaintiffs received a letter, attached here as Exhibit B, from defendants stating plaintiffs could save money by paying the account in full by July 30, 2007.

18. Plaintiffs repeatedly called defendants to discuss the letter but were told the property manager, Dinah Gonzalez, was not available. Unsatisfied with defendants' response, plaintiffs visited Dinah Gonzalez in her office on July 31, 2007 to discuss the letter.

19. On July 31, 2007, Ms. Gonzalez for the first time and only verbally notified plaintiffs that rent had increased on June 1, 2007 to $1050.00 and plaintiffs owed that

difference for June and July of 2007. Defendants also informed plaintiffs that plaintiffs owed $60.00 for June 2007 and $60.00 for July 2007 for month to month charges. Prior to this verbal notice, defendants had never verbally nor in writing given plaintiffs notice of the rent increase.

20. On July 31, 2007, unsatisfied with the management and the rent increase, plaintiffs gave defendants plaintiffs' 30 day notice to terminate tenancy and vacate the unit.

21. On or about August 7, 2007, plaintiffs wrote defendants a letter, attached herein as Exhibit C, disputing the rent increase and that plaintiffs owed defendants any additional rent for June, July, and August of 2007. The letter also again noted plaintiffs' prior 30 day notice to terminate tenancy and vacate the unit.

22. On or about August 13, 2007, defendants sent plaintiffs a letter, attached herein as Exhibit D, alleging that $690.00 was still due in back rent.

23. On or about August 29, 2007, plaintiffs sent defendants another letter, this time notarized, attached herein as Exhibit E, disputing the rent increase and alleged default in rent payment.

24. On or about August 31, 2007, plaintiffs vacated their unit in the complex.

25. On or about September 18, 2007, defendants sent plaintiffs a disposition of security interest, herein attached as Exhibit F, which applied plaintiffs' security deposit to alleged unpaid rent and cleaning fees. The disposition of security interest also alleged that plaintiffs owed defendants a balance of $1, 738.85.

26. Plaintiffs were not in default on their lease at the end of any of their twelve-month rental periods.

27. Many other tenants of defendants' complex also faced increased rent with no

prior written or verbal notice of any rent increase.

28. Many other tenants of defendants' apartments also had to pay security deposits and did not receive interest on their security deposits on an annual basis.

29. Plaintiffs moved units on June 1, 2003 because the basement in the first unit was flooding due to leaks in the floor foundation and because plaintiffs could afford a bigger apartment.

30. Plaintiffs' 66 Indianwood Boulevard basement, plaintiffs' second unit with defendants, was in horrible condition for all four years that plaintiffs resided in said unit. The basement floor's foundation had leaks and soaked many of plaintiffs' boxes. As a result, plaintiffs lost many items stored in the basement. In addition, the basement walls were moldy and turned black because of the mold. Plaintiffs complained to defendants about the leaks. Defendants did nothing to repair these conditions.

31. Many other tenants of defendants' complex also endured leaky and moldy basements.

## Nonpayment of Interest

32. Plaintiffs' 2006 lease state:

> Lessee shall deposit with Lessor the above-described SECURITY DEPOSIT to secure the faithful and timely performance of each and every covenant and provision of this lease, and covenants to maintain the entire SECURITY DEPOSIT with the Lessor until the termination of this lease. Interest shall accrue on the SECURITY DEPOSIT and shall be paid by Lessor to Lessee as required by law...Lessee agrees that the SECURITY DEPOSIT shall not be considered an advance payment of MONTHLY RENT, additional rent or any other amount due from Lessee under this lease and that Lessee shall at no time apply said deposit to payment of any MONTHLY RENT, additional rent or any other amount due from

Lessee under this lease.

Exhibit A ¶ 2.

33. The lease defendants used is a standard form. It mentions that interest shall be paid "as required by law."

34. Defendants only paid plaintiffs security deposit interest on 9/18/07. See Exhibit F. However, defendants used this interest against alleged unpaid rent payments.

35. At no other time have defendants paid or credited plaintiffs with interest on plaintiffs' security deposit.

36. On information and belief, at no time have defendants paid or credited other tenants of the complex with interest on their security deposits as required by law.

**Unfair Rent Increase**

37. Plaintiffs' 2006 lease states:

> Lessee hereby agrees to...or (II) continue to occupy the Premises on a month-to-month basis pursuant to the terms and conditions of this Lease expect that the Monthly Rent shall be as specified in a written notice from Lessor to Lessee and in the absence of any such notice from Lessor, at the then current MONTHLY RENT....in the event that Lessee desires to terminate the month-to-month tenancy, Lessee shall...give written notice to Lessor of Lessee's election to vacate the Premises on the date specified in such notice, which date shall be no earlier than thirty (30) days after the date Lessor receives Lessee's written notice of Lessee's election to terminate the month-to-month tenancy.

Exhibit A ¶ 29.

38. Plaintiffs' 2006 lease states:

> Lessee covenants and agrees that in the event Lessee fails to vacate the Premises upon the termination of this lease or upon the termination of Lessee's right to possession...(b) The Lessee's continued occupancy shall be for a month-to-month term at a monthly rental which shall equal the MONTHLY RENT reserved herein

> plus an additional amount specified by Lessor in written notice to Lessee, or in the absence of any such notice from Lessor at the then current MONTHLY RENT.

Exhibit A ¶ 30.

39. Plaintiffs' 2006 lease states:

> Whenever possible, each provision of this lease shall be interpreted in such manner as to be effective and valid under applicable law...if any provision of this lease conflicts with governing statutory law, the latter shall prevail.

Exhibit A ¶ 35.

40. Plaintiffs' lease terminated on May 31, 2007.

41. Defendants never gave plaintiffs written notice of the rent increase. Defendants only verbally informed plaintiffs of the rent increase on July 31, 2007 when plaintiffs inquired about the alleged nonpayment of rent and an alleged outstanding balance.

42. Plaintiffs paid $950.00, the stated monthly rent in the 2006 lease, as rent for June 2007, July 2007, and August 2007.

43. On July 31, 2007, plaintiffs gave defendants a 30 day notice to vacate 66 Indianwood Boulevard, Park Forest, Illinois.

44. Plaintiffs vacated the premises on or before August 31, 2007.

45. Defendants charged plaintiffs for alleged unpaid rent, late fees associated with alleged unpaid rent, and fees associated with a month to month tenancy.

46. On information and belief, defendants have charged other tenants who have not received written notices of the rent increase for unpaid rent, late fees associated with the alleged unpaid rent, and fees associated with a month to month tenancy.

## COUNT I -- SECURITY DEPOSIT INTEREST ACT

47. Plaintiffs incorporate by reference paragraphs 1-46.

48. Defendants are "lessors" within the meaning of the Illinois Security Deposit Interest Act ("ISDIA"), 765 ILCS 715/0.01 et seq. See Kutcher v. Barry Realty, Inc., 362 Ill. App. 3d 756, 761-62 (1st Dist. 2005) (defining a "lessor" to be one who "lets a property by lease" and therefore holding a management company liable under the ISDIA as an agent to an undisclosed principal, namely the owner).

49. The ISDIA requires lessors of residential real property containing 25 or more units to "pay interest to the lessee computed from the date of the deposit . . . on any deposit held by the lessor for more than 6 months." 765 ILCS 715/1.

50. Furthermore, the Security Deposit Interest Act states as follows:

> § 1. A lessor of residential real property, containing 25 or more units in either a single building or a complex of buildings located on contiguous parcels of real property, who receives a security deposit from a lessee to secure the payment of rent or compensation for damage to property shall pay interest to the lessee computed from the date of the deposit at a rate equal to the interest paid by the largest commercial bank, as measured by total assets, having its main banking premises in this State on minimum deposit passbook savings accounts as of December 31 of the calendar year immediately preceding the inception of the rental agreement on any deposit held by the lessor more than six months.
>
> § 2. The lessor shall, within 30 days after the end of each twelve month rental period, pay to the lessee any interest, by cash or credit to be applied to rent due, except when the lessee is in default under the terms of the lease.
>
> A lessor who willfully fails or refuses to pay the interest required by this Act, shall, upon finding by a circuit court that he has willfully failed or refused to pay, be liable for an amount equal to the amount of the security deposit, together with court costs, and reasonable attorney's fees.

765 ILCS 715/1-2.

51. The leased premises were in a complex of contiguous buildings containing more than 25 units.

52. Defendants willfully failed or refused to pay the interest required by the Security Deposit Interest Act to plaintiffs and the class members.

## CLASS ALLEGATIONS

53. This claim is brought on behalf of a class.

54. The class consists of all natural persons;

a. Who leased from defendants an apartment;

b. And gave a security deposit to defendants;

c. Which defendants held for more than six months;

d. And on which interest was not paid as required by the ISDIA:

e. At any point within two years prior to the filing of this action.

55. The class is so numerous that joinder of all members is impracticable.

56. On information and belief, there are at least 190 persons who leased from defendants an apartment located in the complex and who gave a security deposit to defendants, on which interest was not paid as required by the ISDIA.

57. There are questions of law and fact common to the members of the class, which questions predominate over any questions affecting only individual class members. These questions include:

a. Whether it is the policy and practice of defendants not to pay interest on security deposits:

b. Whether the conduct of defendants was willful; and

c. Whether the conduct of defendants violated the Security Deposit Interest Act.

58. Plaintiffs will fairly and adequately represent the members of the class. Plaintiffs have retained counsel experienced in the prosecution of class actions, including class actions to enforce the obligations of landlords. The claims of plaintiffs and the claims of the class members are based on the same factual and legal theories.

59. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

a. Defendants have inflicted similar injuries to a large number of persons through a single course of conduct; and

b. Individual actions are not economical.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and in favor of the class and against defendants for the following relief:

(1) Statutory damages pursuant to 765 ILCS 715/2 in the amount of the security deposits of plaintiffs and the class members;

(2) Attorney's fees and costs;

(3) Such other or further relief as the Court deems appropriate.

**COUNT II -- BREACH OF CONTRACT**

60. Plaintiffs incorporate by reference paragraphs 1-46. This claim is against Thorncreek Apartments II, LLC only.

61. Defendant violated the lease agreements by not providing written notice of rent increases to plaintiffs and then attempting to collect payment and late fees on the rent increases.

62. Plaintiffs and other tenants suffered pecuniary injury as a result, in that they were charged improper rent increases and late fees.

## CLASS ALLEGATIONS

63. This claim is brought on behalf of a class.

64. The class consists of all natural persons;

a. Who leased from defendant an apartment which required prior notice of rent increases;

b. And who had their rent increased without prior notice.

65. The class is so numerous that joinder of all members is impracticable.

66. On information and belief, there are more than 50 persons who leased from defendant an apartment, who had leases requiring advance notice of rent increases, and who were not notified of rent increases in writing.

67. There are questions of law and fact common to the members of the class, which questions predominate over any questions affecting only individual class members. These questions include:

a. Whether it is the policy and practice of defendant to not give written notice of rent increase and then demand payment of the increased rent and late fees associated therewith;

b. Whether such conduct is a breach of contract.

68. Plaintiffs will fairly and adequately represent the members of the class. Plaintiffs have retained counsel experienced in the prosecution of class actions, including class actions to enforce the obligations of landlords. The claims of plaintiffs and the claims of the class

members are based on the same factual and legal theories.

69. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

a. Defendant has inflicted similar injuries to a large number of persons through a single course of conduct; and

b. Individual actions are not economical.

WHEREFORE, plaintiffs request that the Court enter judgment in plaintiffs' favor and in favor of the class and against defendant for the following relief:

(1) Appropriate actual damages;

(2) Costs of suit;

(3) Such other or further relief as the Court deems proper.

## COUNT III – BREACH OF WARRANTY OF HABITABILITY

70. Plaintiffs incorporate paragraphs 1-46. This claim is against Thorncreek Apartments II, LLC only.

71. The townhome units and common areas of the complex are in a dilapidated and uninhabitable state, such as to constitute a breach of the implied warranty of habitability, Spring v. Little, 50 Ill.2d 351, 280 N.E.2d 208 (1972). The basements of the units have moldy, black walls and leaky floors' foundations which soak the tenants' belongings.

## CLASS ALLEGATIONS

72. This claim is brought on behalf of a class. The class consists of all persons who were tenants of the complex at any time after a date five years prior to the filing of this action.

73. Plaintiffs allege on information and belief that the class is so numerous that

joinder of all members is impractical.

74. On information and belief, there are more than 100 persons who were tenants of the complex at any time after a date five years prior to the filing of this action, who experienced flooding in their units.

75. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. The principal issues are:

a. Whether defendant breached the implied warranty of habitability;

b. The appropriate relief.

76. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling class actions and actions involving unlawful landlord-tenant practices. Neither plaintiffs nor plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

77. Plaintiffs' claims are based on the same facts and legal theories as those of the class members.

78. A class action is appropriate for the fair and efficient adjudication of the controversy, in that:

a. Individual actions are not economically feasible;

b. Judicial economy will result from a class action.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and the class and against defendant for:

(1) Appropriate actual damages;

(2) Such orders, including injunctive relief and appointment of a receiver, as may be necessary to prevent defendant from continuing to maintain the complex in unsafe and dilapidated condition;

(3) Attorney's fees, litigation expenses and costs:

(4) Such other or further relief as the Court deems appropriate.

Respectfully submitted,

LORETTA SCOTT & PEARLEATHA SCOTT

BY: ____________________
One of Plaintiffs' Attorneys

Daniel A. Edelman
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106 (Cook)

**NOTICE OF LIEN**

Please be advised that we have been retained by the Plaintiffs in this case to file suit against you and that we claim a lien upon said recovery.

Sincerely,

Daniel A. Edelman

Atty. No. 41106

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

LORETTA SCOTT AND )
PEARLEATHA SCOTT, )
Plaintiff, on behalf of themselves and)
others similarly situated )
)
)
v. )
)
THORNCREEK APARTMENTS II, LLC )
d/b/a/ THE LOFTS AT THORNCREEK )
and THORNCREEK MANAGEMENT, )
LLC, )
) JURY DEMANDED
Defendants. )

**JURY DEMAND**

Plaintiffs demand trial by jury.

LORETTA SCOTT AND PEARLEATHA SCOTT

BY: ______________________
One of Plaintiffs' Attorneys

Daniel A. Edelman
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106 (Cook)

# APARTMENT LEASE

| LEASE TERM Begins | Ends | MONTHLY RENT | REQUIRED SECURITY DEPOSIT | OTHER REQUIRED RENT** | REQUIRED PET DEPOSIT** | OTHER REQUIRED DEPOSIT |
|---|---|---|---|---|---|---|
| 6/1/06 | 5/31/07 | 950 | 325 | — | — | — |

**See Riders and Exhibits attached hereto and made a part hereof as if fully set forth herein.

LESSOR: Thorn Creek Townhomes, as Managing Agent
11 Fir Street
Park Forest, Illinois 60466

LESSEE: Prarlethea Scott and Loretta Adams

PREMISES: Address 6 Indianwood Apt. No. ______

SPECIAL PROVISIONS: Stove and refrigerator are the property of Residents

Lessor, in consideration of the covenants, conditions and agreements herein contained on the part of the parties hereto, hereby leases the Premises to the Lessee to be occupied as a private dwelling ... [illegible]

1. SPECIAL CONDITIONS. [illegible] ... and no/100 Dollars ($950.00) ... [illegible]

2. SECURITY DEPOSIT. [illegible]

3. CONDITION OF PREMISES. [illegible]

4. NO ASSIGNMENT OR SUBLETTING. [illegible]

5. USE OF PREMISES. [illegible]

6. RADIOS, TV, ETC. [illegible]

7. UPKEEP. [illegible]

8. ACCESS. [illegible]

9. NO SIGNS, ETC. [illegible]

10. NO ALTERATIONS. [illegible]

11. NO INSTALLATION WITHOUT PERMISSION. [illegible]

12. HEAT AND UTILITIES. [illegible]

13. FIRE AND CASUALTY. [illegible]

14. SURRENDER OF PREMISES. [illegible]

15. RIGHTS AND REMEDIES. [illegible]

16. WAIVER OF NOTICES. [illegible]

17. LESSOR'S RIGHTS NOT WAIVED. [illegible]

18. ABANDONMENT AND RELETTING. [illegible]

19. LEGAL EXPENSES. [illegible]

20. LESSEE'S LIABILITY NOT WAIVED. [illegible]

21. RULES AND REGULATIONS PART OF LEASE. [illegible]

22. LEASE BINDING ON HEIRS, ETC. [illegible]

23. LESSOR'S REMEDIES CUMULATIVE. [illegible]

24. INTERPRETATION. [illegible]

25. INDEPENDENT COVENANTS. [illegible]

26. RESIDENT/RENTER INSURANCE. [illegible]

27. LEASE SUBORDINATE TO MORTGAGE. [illegible]

28. UNCOLLECTIBLE CHECK. [illegible]

29. RENEWAL. [illegible]

30. FAILURE TO VACATE UPON TERMINATION. [illegible]

31. EMINENT DOMAIN. [illegible]

32. TRANSFER OF SECURITY DEPOSIT. [illegible]

33. ESTOPPEL CERTIFICATE. [illegible]

34. ENTIRE AGREEMENT. [illegible]

35. SEVERABILITY. [illegible]

36. CAPTIONS. [illegible]

37. PERMITTED OCCUPANTS. [illegible]

| NAME | AGE | RELATIONSHIP TO LESSEE |
|---|---|---|
| Joe | | |
| Julia | | |
| Lorden | | |

Lessee further covenants and agrees [illegible]

38. WAIVER OF TRIAL BY JURY. [illegible]

Loretta Adams (SEAL)
LESSEE

Prarlethea Scott (SEAL)
LESSEE

______ (SEAL)
LESSEE

DATED 5-30 20 06

THORNCREEK as Managing Agent

By ______ (SEAL)

DATED 6-5 20 06

*See Co-Signer Agreement attached hereto and made a part hereof

# APARTMENT LEASE

| LEASE TERM Begins | Ends | MONTHLY RENT | REQUIRED SECURITY DEPOSIT | OTHER REQUIRED RENT** | REQUIRED PET DEPOSIT** | OTHER REQUIRED DEPOSIT |
|---|---|---|---|---|---|---|
| 6/1/06 | 5/31/07 | 950 | 335 | — | — | — |

**See Riders and Exhibits attached hereto and made a part hereof as if fully set forth herein.

LESSOR: Thorn Creek Townhomes, as Managing Agent
11 Fir Street
Park Forest, Illinois 60466

LESSEE: Pearlether Scott and Loretta Adams

PREMISES: Address 66 Indianwood Apt. No. ______

SPECIAL PROVISIONS: Stove and refrigerator are the property of Residents

Lessor, in consideration of the covenants, conditions and agreements herein contained on the part of the parties hereto, hereby leases the Premises to the Lessee to be occupied as a private dwelling of use of Lessee and the other persons whose names and ages hereinafter, and to no other person, and for no other purpose for the above-described term, as may be extended pursuant to paragraph 29 below (collectively, the "LEASE TERM") in consideration thereof, Lessee agrees to pay Lessor the above-described MONTHLY RENT, in advance, and without notice or demand, on or before the FIRST DAY of each calendar month of the LEASE TERM at the Lessor's address set forth above or wherever designated in writing by Lessor from time to time. It is agreed by the parties hereto that the time of each and all such payments is of the essence of this Agreement.

1. SPECIAL CONDITIONS. Notwithstanding anything to the contrary provided herein, Lessor agrees that in the event that Lessor received the MONTHLY RENT payment on or before the FIRST day of any calendar month during the LEASE TERM MONTHLY RENT shall be discounted and Lessee shall have the right to pay for such month's rent the sum of ______________ and no/100 Dollars ($ 950.00) Lessor and Lessee agree that (a) in the event the MONTHLY RENT is not received by Lessor on or before the FIFTH DAY of each calendar month of the LEASE TERM, a charge of Twenty Dollars ($20.00) shall become due and payable, (b) in the event the MONTHLY RENT payment is not received by Lessor on or before the FIFTEENTH Day of each calendar month of the LEASE TERM, an additional charge of Forty Dollars ($40.00) shall become due and payable, and (c) in the event the MONTHLY RENT payment is not received by Lessor on or before the last day of each calendar month of the LEASE TERM, an additional charge of Eighty Dollars ($80.00) shall become due and payable, the foregoing charges shall be cumulative and shall constitute so much rent hereunder payable on demand. Lessee herein agrees to a Ten and No/100 Dollars ($10.00) per day charge should he violate any restriction against pets, which charge shall constitute so much additional rent hereunder, payable on demand. THE TERMS AND CONDITIONS OF THE PET RIDER ATTACHED HERETO ARE MADE A PART HEREOF AS IF FULLY STATED HEREIN (STRIKE IF NOT APPLICABLE) Lessor shall have the right, but not the obligation, to apply any payment received from Lessee towards the payment of any additional rent or charges that remain unpaid at the time of receipt of any such payment, and the balance of Lessee's payment, if any, shall then be applied towards the current MONTHLY RENT due hereunder. The Premises, the building in which the Premises is situated, the facilities and public areas shall be used by the Lessee at his own risk. Drinking of alcoholic beverages in public areas is strictly prohibited. No person other than the person(s) signing this lease and other persons described herein may occupy or live in said Premises without prior written consent of Lessor in it sole and absolute discretion. Lessee warrants and represents to Lessor that all information in the lease application for this lease is true, correct and complete. In the event any of the information supplied by the Lessee in the lease application is false or inaccurate, this lease shall be deemed to be materially breached by Lessee at its inception, and, at the Lessor's option, the Lessee's occupancy shall be deemed a forcible entry and detainer. ______

2. SECURITY DEPOSIT. Lessee shall deposit with Lessor the above-described SECURITY DEPOSIT to secure the faithful and timely performance of each and every covenant and provision of this lease, and covenants to maintain the entire SECURITY DEPOSIT with the Lessor until the termination of this lease. Interest shall accrue on the SECURITY DEPOSIT and shall be paid by Lessor to Lessee as required by law. Provided Lessee has satisfied and complied with all the conditions to the release of the SECURITY DEPOSIT on Exhibit A attached to this lease and made a part hereof, the SECURITY DEPOSIT will be returned to Lessee, including interest, within 30 days after the termination of this lease in accordance with applicable law. Notwithstanding the deposit of the SECURITY DEPOSIT with Lessor or the payment of the charges as provided in the last sentence of this paragraph 2, Lessee shall remain liable for any loss or damage sustained by Lessor arising out of Lessee's failure to fully and faithfully perform Lessee's obligations under this lease. Lessee agrees that the SECURITY DEPOSIT shall not be considered an advance payment of MONTHLY RENT, additional rent or any other amount due from Lessee under this lease and that Lessee shall at no time apply said deposit to payment of any MONTHLY RENT, additional rent or any other amount due from Lessee under this lease. Should the Lessee violate his paragraph by using the SECURITY DEPOSIT as the last month's MONTHLY RENT, Lessee herein agrees to a special handing charge of One Hundred and No/100 Dollars ($100.00) in addition to damages, if any, which charge shall constitute so much additional rent due and payable on the last day of the last month of the LEASE TERM Lessee further agrees to provide the Lessor with Lessee's social security number and to fill out any forms required by the Internal Revenue Service related to the SECURITY DEPOSIT. ______

3. CONDITION OF PREMISES. Lessee has examined the Premises before signing this lease, and is satisfied with the physical condition thereof, including, without limitation, heating, plumbing, and smoke detectors, and Lessee's execution of this lease shall be conclusive evidence of the acknowledgement that the foregoing are in good order and repair, except as otherwise specified herein. Attached hereto as Exhibit B is a Physical Condition Checklist which is made a part hereof as if fully set forth herein. Within seven days after the date of the beginning of the LEASE TERM, Lessee shall complete in full said checklist and sign and deliver said checklist to Lessor at the place where MONTHLY RENT is payable. Lessee agrees that no representation as to condition or repair has been made by Lessor or any agent of Lessor not contained herein, and that no promise to decorate, alter, repair or improve, either before or at the signing hereof, not in writing has been made by Lessor or any agent of Lessor. ______

4. NO ASSIGNMENT OR SUBLETTING. Lessee shall not, without, in each case, the prior written consent of Lessor, in its sole and absolute discretion, sublet the premises or any part thereof, nor assign this lease, nor permit to take place by any act or default of himself for any person, any transfer by operation of law of Lessee's interest created hereby, not offer the Premises or any portion thereof for lease or sublease.

5. USE OF PREMISES. The Premises shall be occupied solely for residential purposes by Lessee and those persons listed herein. The Premises, or any part thereof, shall not be used or occupied for a boarding or lodging house, nor for rooming or school purposes, nor to give instructions of any kind, nor for any trade, business or entertainment, nor for any purpose that will increase the rate of insurance thereon, nor shall there be kept on or used in or around the Premises or in or on any place contiguous thereto any inflammable fluids or explosives. Neither Lessee nor any other person with or without Lessee's permission shall commit or permit any unlawful or immoral practice or any act nor any practice that will injure the reputation of the Premises or the building of which the Premises is a part, or that disturbs other tenants or occupants of the building or that violates any local ordinance applicable to the Premises.

6. RADIOS, TV, ETC. Lessee shall not suffer nor permit radios, stereos, televisions, musical instruments, citizen's band radios or other equipment or mechanical device on the Premises which disturbs occupants of the building containing the Premises at any time. ______

7. UPKEEP. Neither the Lessee nor any other person permitted to occupy the Premises shall suffer or commit any waste in or about the Premises or in or about the building of which it is a part, and shall keep the Premises, including, without limitation, the fixtures therein, appurtenances thereto, windows and doors, in a clean, sightly and sanitary condition and in good repair and free from vermin, rodents and insects all at his own expense, and shall yield the same back to the Lessor upon termination of the lease or on Lessee's right of possession, by expiration of the LEASE TERM or in any other manner, in the same condition as at the date of the signing hereof, except as repaired or altered by Lessor and except for reasonable wear and tear. If, however, the Premises shall not thus be kept by the Lessee as aforesaid, Lessor or persons designated by Lessor may, but are not obligated to, enter the Premises, and put the Premises in good condition and repair, and Lessee agrees to pay Lessor in addition to the MONTHLY RENT hereby reserved, the expense of the Lessor in so doing, the amount of which such expenses shall be due from Lessee to Lessor on the first day of the month following that in which such expense may be incurred, as so much additional rent. Lessee hereby assumes full and complete liability and responsibility for any and all loss, costs or damages resulting from Lessee's negligent or intentional acts or any other act or omission of Lessee or anyone acting on Lessee's behalf or any licensee or invitee of Lessee. Lessee also agrees to see to it that none of such persons violate any of the terms or provisions of this lease or the rules and regulations that are part hereof or cause damage or disrepair to any part of the Premises, the building of which it is a part, or any other property on or adjacent thereto. ______

8. ACCESS. Lessee agrees that the Lessor, or persons designated by Lessor, have the right to enter and may enter the Premises, at all reasonable times, to inspect, alter, repair, or exhibit the Premises for sale or for rent, to permit the Lessor to display a "For Rent" sign in any window during any sixty (60) day period to the expiration of the LEASE TERM and agrees not to move or remove such sign. For each breach of the paragraph, the Lessee agrees to pay the Lessor twice the amount of the MONTHLY RENT as liquidated damages for such action the same constituting so much additional rent hereunder, payable upon demand.

9. NO SIGNS, ETC. Without Lessor's prior written consent, in its sole and absolute discretion, Lessee shall not cause or permit the display of any sign or advertising, matter upon or about the Premises or the building of which it is a part.

10. NO ALTERATIONS. Lessee shall made no alterations or additions without the prior written consent of Lessor, its sole and absolute discretion. All alterations and additions to the Premises shall remain as part of the Premises unless the Lessor shall otherwise elect, including without limitation, locks, bolts, antennas, carpeting and all fixtures.

11. NO INSTALLATION WITHOUT PERMISSION. Lessee shall not install in, on or about the Premises nor attach to or affix to any interior or exterior part of the building of which the Premises is a part including, without limitation, any air conditioning unit, dishwasher, humidifier, dehumidifier, laundry equipment, refrigerator or antenna or any other mechanical device or appliance of any kind or nature in whole or in part, without the prior written consent of Lessor, in its sole and absolute discretion, and any such consent shall be wholly and solely upon the terms and conditions specified in such consent. ______

12. HEAT AND UTILITIES. Lessee covenants and agrees to be responsible for all deposits, charges, fees, payments and penalties for the furnishing of all utilities to the Premises including, without limitation, gas, hot water for heat, electricity, water and sewerage, and further agrees to establish and maintain in its own name accounts with the appropriate utilities and timely make all required deposits and utility payments for such items, and Lessee further covenants and agrees to be fully liable and responsible for any damage to the Premises and the building resulting from a breach of this paragraph 12. Lessor shall also have the right, but not the obligation, to make any such utility payments when due and to pay any arrearages of such payments, which amount shall immediately become due to Lessor from Lessee as an additional rent hereunder. Lessor shall also have the right to apply payments received from Lessee first to payment of additional rent under this subparagraph, and then to MONTHLY RENT, and other amounts due from Lessee under this lease. Lessee hereby indemnifies and holds Lessor and the owner of the Premises harmless from and against any and all claims of nonpayment for utility services, including, without limitation, all amounts paid by Lessor in satisfaction of such claims and all costs, damages, expenses and attorneys' fees which may be incurred. ______

13. FIRE AND CASUALTY. In case the Premises shall be rendered untenantable by fire, explosion or other casualty, Lessor may, at its option, either repair the Premises within sixty (60) days or make available to the Lessee another apartment of Lessor's choice which is comparable to the Premises, in which case all the terms and conditions of this lease shall apply to the new apartment or Lessor shall have the right to terminate this lease. Lessor's exercise of the foregoing option shall not in any way be deemed to limit the liability of Lessee for certain of its acts or the acts of its agents, licensees or invitees as set forth in paragraph 7 hereof.

14. SURRENDER OF PREMISES. At the termination of this lease or of Lessee's right of possession by lapse of time or otherwise, Lessee shall yield immediate possession of the Premises to Lessor, and shall personally deliver all keys to Lessor or persons designated by Lessor at the place where MONTHLY RENT is payable. MONTHLY RENT will continue to accrue daily from the date of surrender to the date that all keys are returned to such location.

15. RIGHTS AND REMEDIES. If Lessee permits the premises to remain vacant or unoccupied without payment of MONTHLY RENT, additional rent or any other amount due hereunder from Lessee for a period of ten (10) days, or in the event of the breach of any covenant or agreement contained in this lease, Lessee's right to the possession of the Premises thereupon shall terminate without notice or demand, and the mere retention of possession thereafter by Lessee shall constitute a forcible detainer, and if the Lessor so elects, but not otherwise, this lease shall thereupon terminate, and upon termination of Lessee's right of possession, as aforesaid whether this lease be terminated or not, Lessee agrees to surrender possession of the Premises immediately. Upon the termination of ... MONTHLY RENT, additional rent and any other

16. WAIVER OF NOTICES. During the LEASE TERM hereof and at all times thereafter, Lessee hereby waives all notices of any election by Lessor hereunder, demand for MONTHLY RENT, additional rent or any other amount due hereunder from Lessee, notice to quit, demand for possession and any and all notices and demands which may or shall be required by any statute of this State relating to forcible detainer and entry, or to landlord and tenant, or any other statute or law. It is agreed that whenever it shall be necessary or desirable for Lessor to serve any notice or demand upon Lessee, it shall be sufficient to deliver or cause to be delivered to Lessee a written or printed copy thereof or to send a written or printed copy thereof by United States certified mail, postage prepaid, addressed to Lessee at the Premises, in which event the notice or demand shall be deemed to have been served at the time the copy is mailed or to leave a written or printed copy thereof with some person above the age of thirteen (13) years residing on or in possession of the Premises or to affix the same upon any door leading into the Premises, in which event or events the notice or demand shall be deemed to have been served at the time the copy is so delivered, left or affixed.

17. LESSOR'S RIGHTS NOT WAIVED. The acceptance of MONTHLY RENT, additional rent or any other amount due hereunder from Lessee after it falls due or after the knowledge of any breach hereof by Lessee, or the giving of any notice or making any demand, whether according to any statutory provision or not, or any other act of waiver other than written waiver shall not be construed as a waiver of Lessor's right to act without notice or demand or of any other right hereby given Lessor, or as an election not to proceed under the provisions of this lease.

18. ABANDONMENT AND RELETTING. If Lessee shall vacate the Premises or Lessee's right to possession thereof shall be terminated, then Lessor shall use reasonable efforts to relet the Premises for such rent and such terms and such period as Lessor may elect without releasing Lessee from any liability hereunder (but Lessor shall not be required to accept or receive any tenant offered by Lessee or by others). Lessee agrees to pay all deficiencies in case of reletting if sufficient sum shall not be received therefrom to satisfy the MONTHLY RENT, additional rent or any other amount due hereunder from Lessee herein provided in addition to the sum necessary to pay all expenses thereof, including decoration, advertising, repairs, replacements, commissions and Lessor's customary service charge.

19. LEGAL EXPENSES. Lessee shall pay and discharge all cost, expenses, attorney's fees, witness fees and administrative costs, which shall be incurred or expended by Lessor due to breach of the covenants and agreements of this lease by Lessee, the same constituting so much additional rent hereunder, payable on demand.

20. LESSEE'S LIABILITY NOT WAIVED. The obligation of Lessee to pay the MONTHLY RENT, additional rent and any other amount due hereunder from Lessee reserved hereby during the Term or during any extensions hereof, or any holdover tenancy shall continue and shall not be deemed to be waived, released or terminated. The payment or receipt of MONTHLY RENT, additional rent or any other amount due hereunder from Lessee shall not waive or affect any such notice, demand suit or judgment or in any manner waive, affect, change, modify, impair or alter any rights or remedies of Lessor, and it is agreed that no act of Lessor or Lessor's agent in apparent acquiescence in or failure to object to, any breach by Lessee of any of the terms, covenants, conditions or agreements in this lease or failure to demand any MONTHLY RENT, additional rent or other sums due hereunder from Lessee, shall act as a bar to or waiver of Lessor's right to thereafter insist upon the complete performance of all such terms, covenants, conditions and agreements herein contained or payment of such MONTHLY RENT, additional rent or any other amounts due hereunder from Lessee.

21. RULES AND REGULATIONS PART OF LEASE. The rules and regulations contained in Exhibit C attached to this lease are hereby made a part hereof as if fully set forth herein and Lessee shall observe the same. Failure to keep and observe said rules will constitute a material breach of the terms of this lease in the same manner as if contained herein as covenants, and a failure to observe the same shall be of the same effect. Lessee shall keep and observe such further rules and regulations as may be required by Lessor or its agent from time to time which Lessor may deem necessary for the proper and orderly care of the building of which the Premises is a part. ______

22. LEASE BINDING ON HEIRS, ETC. All covenants and agreements of this lease shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the Lessor and Lessee, respectively, without affecting the restrictions imposed in paragraph 4 thereof.

23. LESSOR'S REMEDIES CUMULATIVE. The rights and remedies of the Lessor under this lease are cumulative, and the use of one or more thereof shall not exclude or waive the right to the use of any other remedy.

24. INTERPRETATION. The words "Lessor" and "Lessee" used herein include the he/she plural thereof and the necessary changes required to make the provisions hereof apply to corporations or men or women shall be construed as if made.

25. INDEPENDENT COVENANTS. Lessee's covenants to pay MONTHLY RENT, additional rent and other amount due hereunder from Lessee are and shall be independent of each and every other covenant of this lease. Lessee agrees that Lessee's damages for Lessor's breach shall in no case be deducted from MONTHLY RENT, additional rent or other amount due hereunder from Lessee, nor set off for purposes of determining whether any MONTHLY RENT, additional rent or any other amount due hereunder from Lessee are due in any action brought on the basis of unpaid MONTHLY RENT, additional rent or any other sums due hereunder from Lessee except as permitted by law.

26. RESIDENT/RENTER INSURANCE. Lessor is not an insurer of Lessee's person or possessions. Lessee agrees that all of Lessee's person and property on the Premises or elsewhere in the building shall be at the risk of Lessee and that Lessee will carry personal contents insurance and any other such insurance as Lessee deems necessary therefor, except for property damage or personal injury caused solely by the grossly negligent acts of Lessor. Lessee agrees that Lessor, its agents and employees shall NOT be liable for any damage to the person or property of Lessee or any other person occupying or visiting the Premises or building, sustained due to the Premises or building or any part thereof or any appurtenance thereof becoming out of repair (as example and not by way of limitation, damage caused by water, snow, ice, frost, steam, sewerage, sewer gas or odors, heating, cooling and ventilating equipment, bursting or leaking pipes, faucets and plumbing fixtures, water seepage, mechanical breakdown or failure, electrical failure, security services or devices or mailboxes being misused or becoming temporarily out of order, and fire, or due to the happening of any accident in or about the building, or due to any act or neglect of any other tenant or occupant of said building or any other person, or of the neighboring property. ______

27. LEASE SUBORDINATE TO MORTGAGE. This lease is not to be recorded and is subordinate to any present or future mortgages or leases on the land (or any part of it) upon which the building in which the Premises is a part is situated or upon the building itself and to all advances upon the security of such lease or mortgage.

28. UNCOLLECTIBLE CHECK. In the event any payments required of Lessee hereunder are made by check and such check is returned unpaid to Lessor for any reason whatsoever, the Lessor shall charge Lessee the sum of Thirty and No/100 Dollars ($30.00) which charge shall constitute so much additional rent hereunder, payable on demand.

29. RENEWAL. Lessee hereby agrees to give written notice to lessor, no later than thirty (30) days prior to the date specified in the box on the first page of this Lease as the end of the term of this Lease, of Lessee's election to either (i) vacate the Premises on the date specified in the box on the first page of this Lease as the end of the term of this Lease, or (ii) continue to occupy the Premises on a month-to-month basis pursuant to the terms and conditions of this Lease except that the Monthly Rent shall be as specified in a written notice from Lessor to Lessee and in the absence of any such notice from Lessor, at the then current MONTHLY RENT. In the event that the Lessee fails to give Lessor the notice specified in the immediately preceding sentence, the term of this Lease shall automatically, without further action by the Lessor or Lessee, be extended on a month-to-month basis pursuant to the terms and conditions of this Lease, except that the MONTHLY RENT shall be as specified in a written notice from Lessor to Lessee and in the absence of any such notice from Lessor, at the then current MONTHLY RENT. In the event that Lessee desires to terminate the month-to-month tenancy, Lessee shall, on the first day of any calendar month, give written notice to Lessor of Lessee's election to vacate the Premises on the date specified in such notice, which date shall be no earlier than thirty (30) days after the date Lessor receives Lessee's written notice of Lessee's election to terminate the month-to-month tenancy. ______

30. FAILURE TO VACATE UPON TERMINATION. Lessee covenants and agrees that in the event Lessee fails to vacate the Premises upon the termination of this lease or upon the termination of Lessee's right to possession, the Lessor shall have the sole and exclusive right to exercise any one of the following options by giving Lessee written notice thereof.

(a) Lessee shall be deemed a tenant at sufferance and shall pay as liquidated damages for the entire time that possession is withheld a sum equal to two (2) times the amount of MONTHLY RENT herein reserved, prorated for each day of such withholding, or

(b) The Lessee's continued occupancy shall be for a month-to-month term at a monthly rental which shall equal the MONTHLY RENT reserved herein plus an additional amount specified by Lessor in a written notice to Lessee, or in the absence of any such notice from Lessor at the then current MONTHLY RENT.

If Lessor fails to notify Lessee within 30 days after the termination date herein of Lessor's election under either (a) or (b) above, Lessor shall be deemed to have exercised its option under (b) above and that Lessee's tenancy shall be for a month-to-month term at the monthly rental set forth in (b) above.

31. EMINENT DOMAIN. If the whole or a substantial portion of the Premises is condemned by any competent authority for any public use or purpose, this Lease shall be terminated. NO compensation shall be payable to Lessee by Lessor and Lessee shall not be entitled to share in the award or compensation received by Lessor.

32. TRANSFER OF SECURITY DEPOSIT. In the event of a sale of the building of which the Premises is a part, the Lessor, or its assigns shall have the right to transfer the SECURITY DEPOSIT deposited by the Lessee to the purchasers for the benefit of the Lessee and the Lessor, or its assigns, in that event, the Lessee will be given notice of the transfer and the name and address of the purchaser by ordinary mail and upon such notification the Lessor shall be released from all liability to the Lessee for the return of the SECURITY DEPOSIT.

33. ESTOPPEL CERTIFICATE. Lessee agrees, that, from time to time upon not less than ten (10) days prior to request by Lessor, Lessee will deliver to Lessor a statement in writing certifying (I) that this lease is unmodified and in full force and effect (or if there have been modifications, a description of such modifications and that the lease as modified is in full force and effect); (II) the dates to which MONTHLY RENT, additional rent and any other sums due from Lessee hereunder have been paid; (III) that, neither the Lessee nor the Lessor is in default under any provision of this lease, or if in default, the nature thereof in reasonable detail, and (IV) such further matters as may be reasonably requested by Lessor, it being intended that any such statement may be relied upon by any ground lessor or prospective ground lessor or any mortgagee, or any prospective or subsequent purchaser or transferee of all or a part of Lessor's interest in the Premises.

34. ENTIRE AGREEMENT. This lease represents the entire agreement of Lessor and Lessee and may not be changed, altered, modified or amended unless same is in writing and is signed by Lessor and Lessee.

35. SEVERABILITY. Whenever possible, each provision of this lease shall be interpreted in such manner as to be effective and valid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this lease. Further, if any provision of this lease conflicts with governing statutory law, the latter shall prevail.

36. CAPTIONS. All captions in this lease are inserted only as a matter of convenience, and in no way define, limit or extend the scope or intent of this lease or any provision hereof.

37. PERMITTED OCCUPANTS. The Lessee covenants and agrees that he will not, without Lessor's prior written consent in its sole and absolute discretion, use, suffer or permit said premises, or any part thereof, to be used for any purpose other than that of a strictly private dwelling and the Lessee further covenants and agrees that the said dwelling herein demised shall be used and occupied only by ______

NAME AGE RELATIONSHIP TO LESSEE

# APARTMENT LEASE

| LEASE TERM Begins | LEASE TERM Ends | MONTHLY RENT | REQUIRED SECURITY DEPOSIT | OTHER REQUIRED RENT** | REQUIRED PET DEPOSIT** | OTHER REQUIRED DEPOSIT |
|---|---|---|---|---|---|---|
| 6/1/06 | 5/31/07 | 950 | 335 | — | — | — |

**See Riders and Exhibits attached hereto and made a part hereof as if fully set forth herein.

LESSOR: Thorn Creek Townhomes, as Managing Agent
11 Fir Street
Park Forest, Illinois 60466

LESSEE: Pearlethea Scott and Loretta Adams

PREMISES: Address 616 Indianwood Apt. No. ______

SPECIAL PROVISIONS: Stove and refrigerator are the property of Residents.

Lessor, in consideration of the covenants, conditions and agreements herein contained on the part of the parties hereto, hereby leases the Premises to the Lessee to be occupied as a private dwelling of use of Lessee and the other persons whose names and ages hereinafter, and to no other person, and for no other purpose for the above-described term, as may be extended pursuant to paragraph 29 below (collectively, the "LEASE TERM") in consideration thereof, Lessee agrees to pay Lessor the above-described MONTHLY RENT, in advance, and without notice or demand, on or before the FIRST DAY of each calendar month of the LEASE TERM at the Lessor's address set forth above or wherever designated in writing by Lessor from time to time. It is agreed by the parties hereto that the time of each and all such payments is of the essence of this Agreement.

1. SPECIAL CONDITIONS. Notwithstanding anything to the contrary provided herein, Lessor agrees that in the event that Lessor received the MONTHLY RENT payment on or before the FIRST day of any calendar month during the LEASE TERM MONTHLY RENT shall be discounted and Lessee shall have the right to pay for such month's rent the sum of ______ and no/100 Dollars ($ 950 .00) Lessor and Lessee agree that (a) in the event the MONTHLY RENT is not received by Lessor on or before the FIFTH DAY of each calendar month of the LEASE TERM, a charge of Twenty Dollars ($20.00) shall become due and payable, (b) in the event the MONTHLY RENT payment is not received by Lessor on or before the FIFTEENTH Day of each calendar month of the LEASE TERM, an additional charge of Forty Dollars ($40.00) shall become due and payable, and (c) in the event the MONTHLY RENT payment is not received by Lessor on or before the last day of each calendar month of the LEASE TERM, an additional charge of Eighty Dollars ($80.00) shall become due and payable, the foregoing charges shall be cumulative and shall constitute so much rent hereunder payable on demand. Lessee herein agrees to a Ten and No/100 Dollars ($10.00) per day charge should he violate any restriction against pets, which charge shall constitute so much additional rent hereunder, payable on demand. THE TERMS AND CONDITIONS OF THE PET RIDER ATTACHED HERETO ARE MADE A PART HEREOF AS IF FULLY STATED HEREIN (STRIKE IF NOT APPLICABLE) Lessor shall have the right, but not the obligation, to apply any payment received from Lessee towards the payment of any additional rent or charges that remain unpaid at the time of receipt of any such payment, and the balance of Lessee's payment, if any, shall then be applied towards the current MONTHLY RENT due hereunder. The Premises, the building in which the Premises is situated, the facilities and public areas shall be used by the Lessee at his own risk. Drinking of alcoholic beverages in public areas is strictly prohibited. No person other than the person(s) signing this lease and other persons described herein may occupy or live in said Premises without prior written consent of Lessor in it sole and absolute discretion. Lessee warrants and represents to Lessor that all information in the lease application for this lease is true, correct and complete. In the event any of the information supplied by the Lessee in the lease application is false or inaccurate, this lease shall be deemed to be materially breached by Lessee at its inception, and, at the Lessor's option, the Lessee's occupancy shall be deemed a forcible entry and detainer. ______

2. SECURITY DEPOSIT. Lessee shall deposit with Lessor the above-described SECURITY DEPOSIT to secure the faithful and timely performance of each and every covenant and provision of this lease, and covenants to maintain the entire SECURITY DEPOSIT with the Lessor until the termination of this lease. Interest shall accrue on the SECURITY DEPOSIT and shall be paid by Lessor to Lessee as required by law. Provided Lessee has satisfied and complied with all the conditions to the release of the SECURITY DEPOSIT on Exhibit A attached to this lease and made a part hereof, the SECURITY DEPOSIT will be returned to Lessee, including interest, within 30 days after the termination of this lease in accordance with applicable law. Notwithstanding the deposit of the SECURITY DEPOSIT with Lessor or the payment of the charges as provided in the last sentence of this paragraph 2, Lessee shall remain liable for any loss or damage sustained by Lessor arising out of Lessee's failure to fully and faithfully perform Lessee's obligations under this lease. Lessee agrees that the SECURITY DEPOSIT shall not be considered an advance payment of MONTHLY RENT, additional rent or any other amount due from Lessee under this lease and that Lessee shall at no time apply said deposit to payment of any MONTHLY RENT, additional rent or any other amount due from Lessee under this lease. Should the Lessee violate his paragraph by using the SECURITY DEPOSIT as the last month's MONTHLY RENT, Lessee herein agrees to a special handing charge of One Hundred and No/100 Dollars ($100.00) in addition to damages, if any, which charge shall constitute so much additional rent due and payable on the last day of the last month of the LEASE TERM Lessee further agrees to provide the Lessor with Lessee's social security number and to fill out any forms required by the Internal Revenue Service related to the SECURITY DEPOSIT. ______

3. CONDITION OF PREMISES. Lessee has examined the Premises before signing this lease, and is satisfied with the physical condition thereof, including, without limitation, heating, plumbing, and smoke detectors, and Lessee's execution of this lease shall be conclusive evidence of the acknowledgement that the foregoing are in good order and repair, except as otherwise specified herein. Attached hereto as Exhibit B is a Physical Condition Checklist which is made a part hereof as if fully set forth herein. Within seven days after the date of the beginning of the LEASE TERM, Lessee shall complete in full said checklist and sign and deliver said checklist to Lessor at the place where MONTHLY RENT is payable. Lessee agrees that no representation as to condition or repair has been made by Lessor or any agent of Lessor not contained herein, and that no promise to decorate, alter, repair or improve, either before or at the signing hereof, not in writing has been made by Lessor or any agent of Lessor. ______

4. NO ASSIGNMENT OR SUBLETTING. Lessee shall not, without, in each case, the prior written consent of Lessor, in its sole and absolute discretion, sublet the premises or any part thereof, nor assign this lease, nor permit to take place by any act or default of himself for any person, any transfer by operation of law of Lessee's interest created hereby, not offer the Premises or any portion thereof for lease or sublease.

5. USE OF PREMISES. The Premises shall be occupied solely for residential purposes by Lessee and those persons listed herein. The Premises, or any part thereof, shall not be used or occupied for a boarding or lodging house, nor for rooming or school purposes, nor to give instructions of any kind, nor for any trade, business or entertainment, nor for any purpose that will increase the rate of insurance thereon, nor shall there be kept on or used in or around the Premises or in or on any place contiguous thereto any inflammable fluids or explosives. Neither Lessee nor any other person with or without Lessee's permission shall commit or permit any unlawful or immoral practice or any act nor any practice that will injure the reputation of the Premises or the building of which the Premises is a part, or that disturbs other tenants or occupants of the building or that violates any local ordinance applicable to the Premises.

6. RADIOS, TV, ETC. Lessee shall not suffer nor permit radios, stereos, televisions, musical instruments, citizen's

16. WAIVER OF NOTICES. During the LEASE TERM hereof and at all times thereafter, Lessee hereby waives all notices of any election by Lessor hereunder, demand for MONTHLY RENT, additional rent or any other amount due hereunder from Lessee, notice to quit, demand for possession and any and all notices and demands which may or shall be required by any statute of this State relating to forcible detainer and entry, or to landlord and tenant, or any other statute or law. It is agreed that whenever it shall be necessary or desirable for Lessor to serve any notice or demand upon Lessee, it shall be sufficient to deliver or cause to be delivered to Lessee a written or printed copy thereof or to send a written or printed copy thereof by United States certified mail, postage prepaid, addressed to Lessee at the Premises, in which event the notice or demand shall be deemed to have been served at the time the copy is mailed or to leave a written or printed copy thereof with some person above the age of thirteen (13) years residing on or in possession of the Premises or to affix the same upon any door leading into the Premises, in which event or events the notice or demand shall be deemed to have been served at the time the copy is so delivered, left or suffixed.

17. LESSOR'S RIGHTS NOT WAIVED. The acceptance of MONTHLY RENT, additional rent or any other amount due hereunder from Lessee after it falls due or after the knowledge of any breach hereof by Lessee, or the giving of any notice or making any demand, whether according to any statutory provision or not, or any other act of waiver other than written waiver shall not be construed as a waiver of Lessor's right to act without notice or demand or of any other right hereby given Lessor, or as an election not to proceed under the provisions of this lease.

18. ABANDONMENT AND RELETTING. If Lessee shall vacate the Premises or Lessee's right to possession thereof shall be terminated, then Lessor shall use reasonable efforts to relet the Premises for such rent and such terms and such period as Lessor may elect without releasing Lessee from any liability hereunder (but Lessor shall not be required to accept or receive any tenant offered by Lessee or by others). Lessee agrees to pay all deficiencies in case of reletting if sufficient sum shall not be received therefrom to satisfy the MONTHLY RENT, additional rent or any other amount due hereunder from Lessee herein provided in addition to the sum necessary to pay all expenses thereof, including decoration, advertising, repairs, replacements, commissions and Lessor's customary service charge.

19. LEGAL EXPENSES. Lessee shall pay and discharge all cost, expenses, attorney's fees, witness fees and administrative costs, which shall be incurred or expanded by Lessor due to breach of the covenants and agreements of this lease by Lessee, the same constituting so much additional rent hereunder, payable on demand.

20. LESSEE'S LIABILITY NOT WAIVED. The obligation of Lessee to pay the MONTHLY RENT, additional rent and any other amount due hereunder from Lessee reserved hereby during the Term or during any extensions hereof, or any holdover tenancy shall continue and shall not be deemed to be waived, released or terminated. The payment or receipt of MONTHLY RENT, additional rent or any other amount due hereunder from Lessee shall not waive or affect any such notice, demand suit or judgment or in any manner waive, effect, change, modify, impair or alter any rights or remedies of Lessor, and it is agreed that no act of Lessor or Lessor's agent in apparent acquiescence in or failure to object to, any breach by Lessee of any of the terms, covenants, conditions or agreements in this lease or failure to demand any MONTHLY RENT, additional rent or other sums due hereunder from Lessee, shall act as a bar to or waiver of Lessor's right to thereafter insist upon the complete performance of all such terms, covenants, conditions and agreements herein contained or payment of such MONTHLY RENT, additional rent or any other amount due hereunder from Lessee.

21. RULES AND REGULATIONS PART OF LEASE. The rules and regulations contained in Exhibit C attached to this lease are hereby made a part hereof as if fully set forth herein and Lessee shall observe the same. Failure to keep and observe said rules will constitute a material breach of the terms of this lease in the same manner as if contained herein as covenants, and a failure to observe the same shall be of the same effect. Lessee shall keep and observe such further rules and regulations as may be required by Lessor or its agent from time to time which Lessor may deem necessary for the proper and orderly care of the building of which the Premises is a part. ______

22. LEASE BINDING ON HEIRS, ETC. All covenants and agreements of this lease shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the Lessor and Lessee, respectively, without affecting the restrictions imposed in paragraph 4 thereof.

23. LESSOR'S REMEDIES CUMULATIVE. The rights and remedies of the Lessor under this lease are cumulative, and the use of one or more thereof shall not exclude or waive the right to the use of any other remedy.

24. INTERPRETATION. The words "Lessor" and "Lessee" used herein include the he/she plural thereof and the necessary changes required to make the provisions hereof apply to corporations or man or woman shall be construed as it made.

25. INDEPENDENT COVENANTS. Lessee's covenants to pay MONTHLY RENT, additional rent and other amount due hereunder from Lessee are and shall be independent of each and every other covenant of this lease. Lessee agrees that Lessee's damages for Lessor's breach shall in no case be deducted from MONTHLY RENT, additional rent or other amount due hereunder from Lessee, nor set off for purposes of determining whether any MONTHLY RENT, additional rent or any other amount due hereunder from Lessee are due in any action brought on the basis of unpaid MONTHLY RENT, additional rent or any other sums due hereunder from Lessee except as permitted by law.

26. RESIDENT/RENTER INSURANCE. Lessor is not an insurer of Lessee's person or possessions. Lessee agrees that all of Lessee's person and property on the Premises or elsewhere in the building shall be at the risk of Lessee and that Lessee will carry personal contents insurance and any other such insurance as Lessee deems necessary therefor, except for property damage or personal injury caused solely by the grossly negligent acts of Lessor. Lessee agrees that Lessor, its agents and employees shall NOT be liable for any damage to the person or property of Lessee or any other person occupying or visiting the Premises or building, sustained due to the Premises or building or any part thereof or any appurtenance thereof becoming out of repair (as example and not by way of limitation, damage caused by water, snow, ice, frost, steam, sewerage, sewer gas or odors, heating, cooling and ventilating equipment, bursting or leaking pipes, faucets and plumbing fixtures, water seepage, mechanical [illegible]

waste in or about the Premises or in or about the building of which it is a part, and shall keep the Premises including, without limitation, the fixtures therein, appurtenances thereto, windows and doors, in a clean, sightly and sanitary condition and in good repair and free from vermin, rodents and insects all at his own expense, and shall yield the same back to the Lessor upon termination of the lease or on Lessee's right of possession, by expiration of the LEASE TERM or in any other manner, in the same condition as at the date of the signing hereof, except as repaired or altered by Lessor and except for reasonable wear and tear. If, however, the Premises shall not thus be kept by the Lessee as aforesaid, Lessor or persons designated by Lessor may, but are not obligated to, enter the Premises, and put the Premises in good condition and repair, and Lessee agrees to pay Lessor in addition to the MONTHLY RENT hereby reserved, the expense of the Lessor in so doing, the amount of which such expenses shall be due from Lessee to Lessor on the first day of the month following that in which such expense may be incurred, as so much additional rent. Lessee hereby assumes full and complete liability and responsibility for any and all loss, costs or damages resulting from Lessee's negligent or intentional acts or any other act or omission of Lessee or anyone acting on Lessee's behalf or any licensee or invitee of Lessee. Lessee also agrees to see to it that none of such persons violate any of the terms or provisions of this lease or the rules and regulations that are part hereof or cause damage or disrepair to any part of the Premises, the building of which it is a part, or any other property on or adjacent thereto. ______

8. ACCESS. Lessee agrees that the Lessor, or persons designated by Lessor, have the right to enter and may enter the Premises, at all reasonable times, to inspect, alter, repair, or exhibit the Premises for sale or for rent, to permit the Lessor to display a "For Rent" sign in any window during any sixty (60) day period to the expiration of the LEASE TERM and agrees not to move or remove such sign. For each breach of this paragraph, the Lessee agrees to pay the Lessor twice the amount of the MONTHLY RENT as liquidated damages for such action the same constituting so much additional rent hereunder, payable upon demand.

9. NO SIGNS, ETC. Without Lessor's prior written consent, in its sole and absolute discretion, Lessee shall not cause or permit the display of any sign or advertising, matter upon or about the Premises or the building of which it is a part.

10. NO ALTERATIONS. Lessee shall made no alterations or additions without the prior written consent of Lessor, in its sole and absolute discretion. All alterations and additions to the Premises shall remain as part of the Premises unless the Lessor shall otherwise elect, including without limitation, locks, bolts, antennas, carpeting and all fixtures.

11. NO INSTALLATION WITHOUT PERMISSION. Lessee shall not install in, on or about the Premises nor attach to or affix to any interior or exterior part of the building of which the Premises is a part including, without limitation, any air conditioning unit, dishwasher, humidifier, dehumidifier, laundry equipment, refrigerator or antenna or any other mechanical device or appliance of any kind or nature in whole or in part, without the prior written consent of Lessor, in its sole and absolute discretion, and any such consent shall be wholly and solely upon the terms and conditions specified in such consent. ______

12. HEAT AND UTILITIES. Lessee covenants and agrees to a responsible for all deposits, charges, fees, payments and penalties for the furnishing of all utilities to the Premises including, without limitation, gas, hot water for heat, electricity, water and sewerage, and further agrees to establish and maintain in its own name accounts with the appropriate utilities and timely make all required deposits and utility payments for such items, and Lessee further covenants and agrees to be fully liable and responsible for any damage to the Premises and the building resulting from a breach of this paragraph 12. Lessor shall also have the right, but not the obligation, to make any such utility payments when due and to pay any arrearages of such payments, which amount shall immediately become due to Lessor from Lessee an additional rent hereunder. Lessor shall also have the right to apply payments received from Lessee first to payment of additional rent under this subparagraph, and then to MONTHLY RENT, and other amounts due from Lessee under this lease. Lessee hereby indemnifies and holds Lessor and the owner of the Premises harmless from and against any and all claims of nonpayment for utility services, including, without limitation, all amounts paid by Lessor in satisfaction of such claims and all costs, damages, expenses and attorneys' fees which may be incurred. ______

13. FIRE AND CASUALTY. In case the Premises shall be rendered untenantable by fire, explosion or other casualty, Lessor may, at its option, either repair the Premises within sixty (60) days or make available to the Lessee another apartment of Lessor's choice which is comparable to the Premises, in which case all the terms and conditions of this Lease shall apply to the new apartment or Lessor shall have the right to terminate this lease. Lessor's exercise of the foregoing option shall not in any way be deemed to limit the liability of Lessee for certain of its acts or the acts of its agents, licensees or invitees as set forth in paragraph 7 hereof.

14. SURRENDER OF PREMISES. At the termination of this lease or of Lessee's right of possession by lapse of time or otherwise, Lessee shall yield immediate possession of the Premises to Lessor, and shall personally deliver all keys to Lessor or persons designated by Lessor at the place where MONTHLY RENT is payable. MONTHLY RENT will continue to accrue daily from the date of surrender to the date that all keys are returned to such location.

15. RIGHTS AND REMEDIES. If Lessee permits the premises to remain vacant or unoccupied without payment of MONTHLY RENT, additional rent or any other amount due hereunder from Lessee for a period of ten (10) days, or in the event of the breach of any covenant or agreement contained in this lease, Lessee's right to the possession of the Premises thereupon shall terminate without notice or demand, and the mere retention of possession thereafter by Lessee shall constitute a forcible detainer, and if the Lessor so elects, but not otherwise, this lease shall thereupon terminate, and upon termination of Lessee's right of possession, as aforesaid whether this lease be terminated or not, Lessee agrees to surrender possession of the Premises immediately. Upon the termination of Lessee's right of possession, Lessee shall remain liable for MONTHLY RENT, additional rent and any other amounts due until the end of the LEASE TERM. If Lessee permits the Premises to remain vacant or unoccupied without payment of MONTHLY RENT, additional rent or any other amount due for a period of ten (10) days, or if Lessee shall at any time during the LEASE TERM or at the termination of this lease or of Lessee's right of possession of the Premises cease to occupy the Premises as and for his actual residence or fails to remove from the Premises any and all articles of personal property therein, whether they be the property of the Lessee or others, then in any such case Lessor may distrain from rent and shall have a lien on Lessee's personal property for all MONTHLY RENT, additional rent or any other amount due hereunder from Lessee and Lessee hereby grants to Lessor full and complete right to enter the Premises and remove there from any such articles of personal property as may be found therein, without any liability to Lessee or others whose property may be left on the Premises. Lessor is also hereby given the right and privilege to remove such articles from the Premises, to store at Lessee's sole risk, or to sell any and all such articles at public or private sale and apply the proceeds of any such sale after deducting all costs and expenses incurred thereby to any indebtedness due to the Lessor from Lessee. If there is no such indebtedness due and owing to Lessor, Lessor shall hold the net proceeds of any such sale for the Lessee, payable to him upon demand in writing. Neither Lessor nor its agents, employees or representatives shall be liable to Lessee for the care or preservation of any such articles except if such damage shall be due to gross negligence or willful misconduct.

or future mortgages or leases on the land (or any part of it) upon which the building in which the Premises is a part is situating or upon the building itself and to all advances upon the security of such leases or mortgages.

28. UNCOLLECTIBLE CHECK. In the event any payments required of Lessee hereunder are made by check and such check is returned unpaid to Lessor for any reason whatsoever, the Lessor shall charge Lessee the sum of Thirty and No/100 Dollars ($30.00) which charge shall constitute so much additional rent hereunder, payable on demand. ______

29. RENEWAL. Lessee hereby agrees to give written notice to lessor, no later than thirty (30) days prior to the date specified in the box on the first page of this Lease as the end of the term of this Lease, of Lessee's election to either (i) vacate the Premises on the date specified in the box on the first page of this Lease as the end of the term of this Lease, or (ii) continue to occupy the Premises on a month-to-month basis pursuant to the terms and conditions of this Lease except that the Monthly Rent shall be as specified in a written notice from Lessor to Lessee and in the absence of any such notice from Lessor, at the then current MONTHLY RENT. In the event that the Lessee fails to give Lessor the notice specified in the immediately preceding sentence, the term of this Lease shall automatically, without further action by the Lessor or Lessee, be extended on a month-to-month basis pursuant to the terms and conditions of this Lease, except that the MONTHLY RENT shall be as specified in a written notice from Lessor to Lessee and in the absence of any such notice from Lessor, at the then current MONTHLY RENT. In the event that Lessee desires to terminate the month-to-month tenancy. Lessee shall, on the first day of any calendar month, give written notice to Lessor of Lessee's election to vacate the Premises on the date specified in such notice, which date shall be no earlier than thirty (30) days after the date Lessor receives Lessee's written notice of Lessee's election to terminate the month-to-month tenancy. ______

30. FAILURE TO VACATE UPON TERMINATION. Lessee covenants and agrees that in the event Lessee fails to vacate the Premises upon the termination of this lease or upon the termination of Lessee's right to possession, the Lessor shall have the sole and exclusive right to exercise any one of the following options by giving Lessee written notice thereof.

(a) Lessee shall be deemed a tenant at sufferance and shall pay as liquidated damages for the entire time that possessions is withheld a sum equal to two (2) times the amount of MONTHLY RENT herein reserved, prorated for each day of such withholding, or

(b) The Lessee's continued occupancy shall be for a month-to-month term at a monthly rental which shall equal the MONTHLY RENT reserved herein plus an additional amount specified by Lessor in a written notice to Lessee, or in the absence of any such notice from Lessor at the then current MONTHLY RENT.

If Lessor fails to notify Lessee within 30 days after the termination date herein of Lessor's election under either (a) or (b) above, Lessor shall be deemed to have exercised its option under (b) above and that Lessee's tenancy shall be for a month-to-month term at the monthly rental set forth in (b) above. ______

31. EMINENT DOMAIN. If the whole or a substantial portion of the Premises is condemned by any competent authority for any public use or purpose, this Lease shall be terminated. NO compensation shall be payable to Lessee by Lessor and Lessee shall not be entitled to share in the award or compensation received by Lessor.

32. TRANSFER OF SECURITY DEPOSIT. In the event of a sale of the building of which the Premises is a part, the Lessor, or its assigns shall have the right to transfer the SECURITY DEPOSIT deposited by the Lessee to the purchasers for the benefit of the Lessee and the Lessor, or its assigns, in that event, the Lessee will be given notice of the transfer and the name and address of the purchaser by ordinary mail and upon such notification the Lessor shall be released from all liability to the Lessee for the return of the SECURITY DEPOSIT.

33. ESTOPPEL CERTIFICATE. Lessee agrees, that, from time to time upon not less than ten (10) days prior to request by Lessor, Lessee will deliver to Lessor a statement in writing certifying (i) that this lease is unmodified and in full force and effect (or if there have been modifications, a description of such modifications and that the lease as modified is in full force and effect); (ii) the dates to which MONTHLY RENT, additional rent and any other sums due from Lessee hereunder have been paid; (iii) that, neither the Lessee nor the Lessor is in default under any provision of this lease, or if in default, the nature thereof in reasonable detail, and (iv) such further matters as may be reasonably requested by Lessor, it being intended that any such statement may be relied upon by any ground lessor or prospective ground lessor or any mortgagee, or any prospective or subsequent purchaser or transferee of all or a part of Lessor's interest in the Premises.

34. ENTIRE AGREEMENT. This lease represents the entire agreement of Lessor and Lessee and may not be changed, altered, modified or amended unless same is in writing and is signed by Lessor and Lessee.

35. SEVERABILITY. Whenever possible, each provision of this lease shall be interpreted in such manner as to be effective and valid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this lease. Further, if any provision of this lease conflicts with governing statutory law, the latter shall prevail.

36. CAPTIONS. All captions in this lease are inserted only as a matter of convenience, and in no way define, limit or extend the scope or intent of this lease or any provision hereof.

37. PERMITTED OCCUPANTS. The Lessee covenants and agrees that he will not, without Lessor's prior written consent in its sole and absolute discretion, use, sublet or permit said premises, or any part thereof, to be used for any purpose other than that of a strictly private dwelling and the Lessee further covenants and agrees that the said dwelling herein demised shall be used and occupied only by ______

| NAME | AGE | RELATIONSHIP TO LESSEE |
|---|---|---|
| Jor | | |
| Jaylen | | |
| Lorden | | |

Lessee further covenants and agrees that he will not, without Lessor's prior written consent in its reasonable discretion, permit any person not listed above to occupy the Premises, it is expressly understood and agreed by the Lessee that the limitation of occupancy to the Lessee and the above people and the restriction of use of the premises are express limitation upon the Lessee's leasehold interest herein demised, and it is expressly understood and agreed that in the event of violation by the said Lessee, this lease and the occupancy by the Lessee may at the option of the Lessor, its agents or assigns, be terminated in the manner hereinafter set forth.

38. WAIVER OF TRIAL BY JURY. To the extent permitted by applicable law, Lessee hereby waives any right to a trial by jury in any action or proceeding to enforce or defend any rights under this lease, and Lessee agrees that any such action or proceeding shall be tried before a court and not before a jury.

[signature] (SEAL) *
LESSEE

[signature] (SEAL)
LESSEE

______ (SEAL)

DATED 5-30, 20 06

THORNCREEK as Managing Agent

By [signature] (SEAL)

DATED 6-5, 20 06

*See Co-Signor Agreement attached hereto and made a part hereof

EXHIBIT B

G3 Ju

Amber

9/5

Lofts At Thorncreek (Two)
3300 Western Avenue
Park Forest, IL 60466
708/748-6300

July 18, 2007

Scott, Pearleatha
66 Indianwood Boulevard # I066
Park Forest, IL 60466

Dear Scott, Pearleatha:

Just a friendly reminder you will save $80.00 if you can pay your account in full by July 30, 2007.

Please call or come in and talk to us.

Sincerely,

Dinah Gonzales

Property Manager

Lease 1050.00

Month to M
1050
1110

Recieved this letter on
7-31-07

950
70
1020
- 510
510

# EXHIBIT C

August 7, 2007

The lofts at Thorncreek

Park Forest, IL 60466

Dear Ms. Dinah Gonzalez (Property Manager)

This letter pertains to our conversation, which took place in your office on July 31, 2007. This letter will also certify that this was also the day that I was verbally informed that my rent had increased on June 1, 2007 from $950.00 to $1050.00 added $60.00 a month for month to month charges.

I was not aware prior to our conversation that my rent had increased. Therefore, I do not feel responsible for any of the late charges or increases prior to our conversation. The law states that I must be provided with a written notice at least 30 days prior, if the rental agreement will not be renewed or of any rental increase. If the landlord fails to give the required written notice the tenant may remain in the unit for 60 days under the same terms and conditions as the last month of the existing agreement. **I stand firmly I was not notified.**

You stated that my rent increase went into effect on June 1, 2007. But, in June, I paid my rent of $950.00, and also in July I paid my rent of $950.00(because I was not aware of any changes). The rent was accepted both times, and neither time did I receive a letter that I was carrying a balance that my rent had increased. On July 31st I received my very first notice, (which I kept) of having a balance. I did not understand why I got that letter so I called the leasing office and spoke with Amber. Still I was not satisfied so I went into the leasing office, that's when you and I had our conversation and you told me that my rent went up.

When I mentioned to you that I was not notified of any changes in rent regarding the increase and not receiving a letter regarding lease renewal. You said things to me that was quite disturbing. You said "Let's try and work this out," "How would you be able to explain this", "You don't want to lose your job"

I replied "If I felt that any of this was of my own negligence I would not be here sitting in your office, but since I feel that it was the carelessness of the leasing office I do not feel responsible. I have always paid my rent and my debts to the landlord, because I would not jeopardize my living.

You even said that when my lease expired on May 31st 2007,"why I didn't call the leasing office to find out about my renewal lease". Again, I don't feel that was my responsibility, but the responsibility of leasing office to send notice. I have been here since 2001 and I have never had to call the leasing office about my lease.

Page 2

You said that I should have received a notice in March. But, I told you that I did not receive a notice, in March, my lease expired on May 31, 2007 why didn't I get a letter in April 2007, and your reply was we do not send second notices. Then I said, well if you don't send second notices, what about the notice that would have made me aware that I had owed monies from June and July. You replied "There are over 400 units, you can not manage them all, there are tenants that don't pay rent and there are some that only pay a portion of there rent. You had to cut back on staff and that you and one of the other girls walks the pavement to deliver notices" I replied I understand that, but you did not give me a notice. For 60 days after receiving the first $950.00 for June, you fail to notify me of any thing, until July 31st 2007. One whole day before August rent is due, you tell me that I must pay $1110.00 for August.

Even after talking to you in your office, you still fail to give me written notice that my rent increased or even a copy of the letter that you claimed to have sent to me informing me of the increase.

Therefore, on July 31st, I admit that I was verbally informed by Ms. Dinah Gonzalez the property manager that my rent will increase to $1050.00 plus $60.00 additional for month to month rental, which will make the agreement effective September 1, 2007. I was also made aware that a 30 day notice is required to vacate.

Therefore for the month of August I will only pay what I believe I am responsible for

I am responsible for:

| | |
|---|---|
| • The remaining balance of August rent ($510.00 was paid on July 31, 2007) | $440.00 - Check Enclosed #682 9/14 |
| • Installment of 2 air conditioning units | 70.00 |
| • Late fee | 40.00 |
| Total | $550.00 |

Because of poor management and negligence of the leasing office, on July 31st I also gave a 30 day notice to vacate 66 Indianwood Blvd. This issue that could not be resolved otherwise forced you long term tenant to reside elsewhere. Vacating the premises believing that I do not owe any monies to The Lofts at Thorncreek.

Sincerely,

Loretta Adams
Pearleatha Scott

Cc: Cooperate office

EXHIBIT D

Lofts At Thorncreek (Two)
3300 Western Avenue
Park Forest, IL 60466
708/748-6300

BALANCE DUE NOTIFICATION

August 13, 2007

Apartment: I066

To All Tenant(s) in possession, including:

Scott, Pearleatha
66 Indianwood Boulevard # I066
Park Forest, IL 60466

As of today, our records indicate there still is an unpaid balance due on your account. Please review the following charges and remit the amount below.

Amount(s) due as of Monday, August 13, 2007: $690.00

If you have any questions regarding this balance due, please call the office.

Sincerely,

The Lofts at Thorn Creek

Management

PAY IN FULL BY THE 15TH ---
TAKE $50 OFF YOUR
BALANCE!!!!

# EXHIBIT E

COPY

August 29, 2007

THE LOFTS AT THORNCREEK
PARK FOREST, IL 60466

ATTN: MS. DINAH GONZALEZ (PROPERTY MANAGER)

The reason that I am writing this letter is because every time I have tried calling you to discuss this *alleged* balance that you said that I have, your administrator "Amber" always would say that you are not available, or you have just left for the day.

I recently, dropped you a letter, stating that I do not owe for pass do rent. The way things were handled by you and your administration staff was indeed wrong. Wrong in more ways then one. Wrong because you and your staff failed to give proper notice that my rent had increased. You did not send notice to me regarding my lease, not 60 days or 30 days prior to it's ending date, (ended on May 31st). Matter of fact, you did not send any correspondences, about ANYTHING, regarding rent, accounts, or lease. Therefore, without receiving a notice of any changes of the above, I continued to pay my rent as stated in my then contract of $950.00.

For each month both June and July, I paid my rent of $950.00 and each time it was accepted, and neither time did you or your staff send me a letter, a note, or a phone call or anything that I owed a balance. ***(Had you sent proper and timely notices I would have responded accordingly to the changes, I will not jeopardize my living or the family that resides with me.)*** I have been a tenant at Thorncreek Townhomes, now called The lofts at Thorncreek, since 2001.The managers before you and even you, have never had a problem with me paying my rent, I may have been late, but I never just not paid!!!!!!

Because of your administrative negligence, you now want to past the blame to the tenant, and make the tenant (me) responsible for your negligence, and it's not right.
It's not my job to call the business office to inquire about my lease or changes to my lease/ contract, (that is what Ms. Gonzolaz the property manager told me I should have done, the day I sat in her office on 7/31/ 2007, also the day I found out about this mess). It is my job to pay what my contract says I am to pay and I did.

I have done my research on this issue, and I will continue to research this issue. I have talked to other tenants, I have talked with - specialist with tenant/ landlord rights and I have talk to legal, and I will continue, until this issue is resolved.

On July 31st, 2007, that was when I was officially verbally aware of my rental increase, by the property manager Ms. Dinah Gonzalez. Which, by right makes the verbal contract effective, September 1, 2007.

$950.00 was paid for August rent.
Balance remaining:
$70.00 for installing 2 air conditioning units @ $35.00 per unit
$40.00 for late fee

Ms. Dinah Gonzalez and her administration staff was negligent, and do not want to take liability for there carelessness.

This is my true and notarized statement.

X [signature]
66 Indianwood, Park Forest IL 60466

Subscribed and sworn to before me this 29 day of August, 2007
at Chicago, County of Cook State of Illinois
Notary Public [signature]

"OFFICIAL SEAL"
ANN BROWNLOW
NOTARY PUBLIC STATE OF ILLINOIS
COMMISSION EXPIRES 08/04/10

## WHAT ARE THE LANDLORD'S GENERAL DUTIES UNDER THE ORDINANCE?

- To give tenant written notice of the owner's or manager's name, address and telephone number. {Mun. Code ch. 5-12-090}
- To give new or renewing tenants notice of:
  1) Code citations issued by the City in the previous 12 months;
  2) Pending Housing Court or administrative hearing actions;
  3) Water, electrical or gas service shut-offs to the building during entire occupancy. {Mun. Code ch. 5-12-100}
- To maintain the property in compliance with all applicable provisions of the Municipal Code. {Mun. Code ch. 5-12-070}
- To not require a tenant to renew an agreement more than 90 days before the existing agreement terminates. (eff. 1-1-92) {Mun. Code ch. 5-12-130 (j)}
- To provide a tenant with at least 30 days written notice if the rental agreement will not be renewed. If the landlord fails to give the required written notice, the tenant may remain in the dwelling unit for 60 days under the same terms and conditions as the last month of the existing agreement. (eff. 1-1-92) {Mun. Code ch. 5-12-130 (j)}
- To not enforce prohibited lease provisions. {Mun Code ch. 5-12-140}

## TENANT REMEDIES {MUN. CODE CH. 5-12-110}

Minor Defects

- If the landlord fails to maintain the property in compliance with the Code and the tenant or the tenant's family or guests are not responsible for the failure, the tenant may:
  1) Request in writing that the landlord make repairs within 14 days, and if the landlord fails to do so the tenant may withhold an amount of rent that reasonably reflects the reduced value of the unit. Rent withholding begins from the fifteenth day until repairs are made; OR
  2) Request in writing that the landlord make repairs within 14 days and if the landlord fails to do so the tenant may have the repairs made and deduct up to $500 or 1/2 of the month's rent, whichever is more, but not to exceed one month's rent. Repairs must be done in compliance with the Code. Receipt for the repairs must be given to the landlord and no more than the cost of the repairs can be deducted from the rent; and also
  3) File suit against the landlord for damages and injunctive relief.

Major Defects

- If the landlord fails to maintain the property in compliance with the Code, and the failure renders the premises not reasonably fit and habitable, the tenant may request in writing that the landlord make repairs within 14 days. If after 14 days repairs are not made, the tenant may immediately terminate the lease. Tenant must deliver possession and move out in 30 days or tenant's notice is considered withdrawn. (eff. 1-1-92)

## FAILURE TO PROVIDE ESSENTIAL SERVICES (HEAT, RUNNING OR HOT WATER, ELECTRICITY, GAS OR PLUMBING) {MUN. CODE CH. 5-12-110(F)}

- If, contrary to the lease, an essential service is not provided, or if the landlord fails to maintain the building in material compliance with the Code to such an extent that such failure constitutes an immediate danger to the health and safety of the tenant, and the tenant or tenant's family or guests are not responsible for such failure, after giving written notice, the tenant may do ONE of the following:
  1) Procure substitute service, and upon presenting paid receipts to the landlord, deduct the cost from the rent; OR
  2) File suit against the landlord and recover damages based on the reduced value of the dwelling unit; OR
  3) Procure substitute housing and be excused from paying rent for that period. The tenant may also recover from the landlord the cost of substitute housing up to an amount equal to the monthly rent for each month or portion thereof; OR
  4) Request that the landlord correct the failure within 24 hours and if the landlord fails to do so, withhold the monthly rent an amount that reasonable reflects the reduced value of its premises. Rent withholding cannot start until after the 24 hours expires and applies only to days past the 24-hour waiting period; OR (eff. 1-1-92)
  5) Request that the landlord correct the failure within 72 hours and if the landlord fails to do so, terminate the rental agreement. If the rental agreement is terminated, the tenant must deliver possession and move out within 30 days or the notice of termination is considered withdrawn. (eff. 1-1-92)

Note: Remedies 4) and 5) may not be used if the failure is due to the utility provider's failure to provide service. For the purposes of this section only, the notice a tenant provides must be in writing, delivered to the address the landlord has given the tenant as an address to which notices should be sent. If the landlord does not inform the tenant of an address, the tenant may deliver written notice to the last known address of the landlord or by any other reasonable means designed in good faith to provide written notice to the landlord. (eff.1-1-92)

AfTER my Conversation on July 31st 2007 with Ms. Gonzalez I Called the office, Spoke to Amber, I wanted the name and address for the owner, She said that She could not give that information.

Notice of Rental agreement or rental fee was never give to me before July 31st 2007.

# LEASES

***This pamphlet describes the different types of leases, how and when you can terminate a lease and identifies different lease provisions that are prohibited by law.***

## Does every tenant have a lease agreement?

Yes. It may be a written lease or an oral (unwritten) lease.

## With any lease agreement, verbal or written; what does my landlord have to provide me with?

- Summary of the Chicago Residential Landlord Tenant Ordinance
- Owner's address and phone number.
- Lead Disclosure
- Heating Cost Disclosure, if tenant is responsible for paying heat
- Any building code violations within the last year.

## What is the advantage of a written lease agreement?

It sets out the terms of your agreement with the landlord. Furthermore, it states how long your tenancy will last, and your landlord cannot terminate this tenancy early unless you violate one of the lease provisions.

## If I do not have a written lease, when can my tenancy be terminated?

Either you or your landlord can terminate it with at least one month advance written notice (if you pay rent every month), or at least 7 days advance written notice (if you pay rent every week). Neither of you has to give reason for terminating the tenancy.

## If I have a written lease, can my landlord raise my rent before the lease ends?

Only if the lease states that the landlord can do this. Otherwise, your rent must remain the same until the lease ends.

## If I do not have a written lease, when can my landlord raise the rent?

Your landlord can raise the rent only after giving you advance written notice. If you pay rent on a monthly basis, you must receive at least one month written notice. If you pay rent on a weekly basis, you must receive at least 7 days written notice.

## What if I have a written lease that has provisions that I don't like?

Don't sign it. Once you sign the lease you are bound by all its provisions unless these provisions are against the law. (Illegal provisions are listed below). If you don't like a provision, ask your landlord to cross it out. If he/she agrees to do this, both of you should put your initials next to the provision that has been crossed out.

## What lease provisions are against the law?

Any provision stating that you agree to:

you failed to give notice, making me aware of the increase on July 31st 20[illegible]

# EXHIBIT F

## ADVISE TO FORMER TENANT ON DISPOSITION OF SECURITY DEPOSIT

Date: 9-18-07

Apt. No. 66 Indianwood

Tenant Name: Pearlethea Scott

New Address: 578 Price

Calumet City, IL

Thank you, Thorn Creek Apartments

[illegible signature]
(manager)

**YOUR DEPOSIT OF $** 335 + 16.15 interest
has been applied as follows:

- ☐ Refunded in Full
- ☐ Refunded in Part
- ☒ Charged due to:
  - ☐ Insufficient Notice
  - ☒ Unpaid Rent ............ $ 1,940.00
  - ☒ Cleaning ............ $ 150.00
  - ☐ Carpet ............ $ ______
  - ☐ Appliances ............ $ ______
  - ☐ Other ______ $ ______
  - ☐ Other ______ $ ______

**TOTAL REFUND** $ ______

**BALANCE DUE** $ 1,738.85

Date Sent 9-18-07

Gas Y Light X Water Y Water Meter Y Date:____ Due Date:____

Bill Schedule Indicate Y or N

# APARTMENT INSPECTION REPORT

Easy X Medium____ Hard____

| Resident's Name | Scott | | | | | | |
|---|---|---|---|---|---|---|---|
| Address | 1010 Indianwood | | | | | | |
| | Move In Condition | Move Out Inspection Charges: Spot Cleaning | Deep Cleaning | Cost-to Replace | | | Charge Assessed |
| Kitchen | | | | | | | |
| floors | | $ 62 (circled) | $ 78 | $ 325 | | | |
| walls | | $ 143 | $ 228 | $ 520 | repaint | | |
| ceiling | | $ 78 | $ 104 | $ 325 | repaint | | |
| counters | | $ 39 | $ 78 | $ 228 | | | |
| cabinets | | $ 85 (circled) | $ 98 | $ 1,680 | $ 1,080 | $ 2,210 | |
| stove | | $ 65 | $ 130 | $ 358 | | | |
| refrigerator | | $ 78 | $ 130 | $ 507 | | | |
| sink | | $ 20 | $ 52 | $ 163 | | | |
| lights | | $ 7 | $ 13 | $ 20 | each | | |
| windows | | $ 20 | $ 33 | $ 130 | | | |
| blinds | | $ 20 | $ 33 | $ 98 | | | |
| door | | $ 33 | $ 65 | $ 293 | | | |
| storm door | | $ 33 | $ 65 | $ 215 | | | |
| Living Room/Dining Room | | | $ - | | | | |
| floors | | $ 62 | $ 78 | $ 325 | repoly | | |
| walls | | $ 163 | $ 260 | $ 715 | repaint | | |
| ceiling | | $ 58 | $ 130 | $ 455 | repaint | | |
| lights | | $ 7 | $ 13 | $ 20 | each | | |
| windows | | $ 46 | $ 85 | $ 1,040 | | | |
| blinds | | $ 33 | $ 72 | $ 293 | | | |
| closet door | | $ 20 | $ 46 | $ 163 | | | |
| entry door | | $ 33 | $ 65 | $ 423 | | | |
| storm door | | $ 33 | $ 65 | $ 215 | | | |
| hallway | | $ 33 | $ 65 | $ 228 | repaint | | |
| Bathroom | | | $ - | | | | |
| floor | | $ 33 | $ 98 | $ 455 | | | |
| walls | | $ 46 | $ 111 | $ 228 | repaint | | |
| ceiling | | $ 39 | $ 78 | $ 195 | repaint | | |
| shower door | | $ 65 | $ 98 | $ 293 | | | |
| tub | | $ 33 | $ 98 | $ 260 | re-glaze | | |
| window | | $ 20 | $ 33 | $ 130 | | | |
| sill | | $ 20 | $ 46 | $ 163 | | | |
| sink | | $ 13 | $ 33 | $ 124 | | | |
| toilet | | $ 33 | $ 65 | $ 195 | | | |
| tile grout | | $ 33 (circled) | $ 98 | $ 390 | | | |
| medicine cabinet | | $ 20 | $ 46 | $ 98 | | | |
| door | | $ 20 | $ 46 | $ 163 | | | |
| Bedrooms | | | $ - | | | Bdrm 1 | Bdrm 2 / Bdrm 3 |
| floors | | $ 62 | $ 78 | $ 325 | repoly | | |
| walls | | $ 98 | $ 163 | $ 520 | repaint | | |
| ceilings | | $ 65 | $ 98 | $ 390 | repaint | | |
| lights | | $ 7 | $ 13 | $ 20 | each | | |
| windows | | $ 72 | $ 124 | $ 228 | each | | |
| blinds | | $ 33 | $ 72 | $ 390 | | | |
| closet | | $ 20 | $ 39 | | | | |
| doors | | $ 20 | $ 46 | $ 163 | each | | |
| Basement | | | $ - | | | | |
| floor | | $ 33 | $ 72 | $ 228 | repaint | | |
| walls | | $ 72 | $ 124 | $ 293 | repaint | | |
| furnace | | | $ - | $ 2,340 | | | |
| hot water heater | | | $ - | $ 845 | | | |
| Exterminator | | | $ - | $ 390 | | | |
| Trash per Load | | | $ - | $ 130 | | | |
| Change Locks | | | $ - | $ 98 | each | | |
| Back Porch | | $ 33 | $ 65 | | | | |
| Front Porch | | $ 33 | $ 85 | | | | |
| Remove Satellite Dish | | | $ - | $ 195 | | $150 (circled) | |
| Total of Charges | | | | | | | |

Resident has inspected the apartment prior to occupancy and accepts same as noted above.

Resident understands that upon vacating apartment, cleaning and replacement fees as set forth above will be charged and he will be responsible for damages as set forth in the Rental Agreement.

Move Out Inspection Date 9-5-07

Signature [signature]

Resident Signature ____ Date ____ Manager Signature ____

excel/forms/apartment inspection 7/19/2006