MHN

FILED
FEB 15 2008 NB
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

2008 FEB 15 PM 3:54
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORETTA SCOTT and PEARLEATHA SCOTT,<br><br>Plaintiffs on behalf of themselves and others similarly situated,<br><br>v.<br><br>THORNCREEK APARTMENTS II, LLC D/B/A THE LOFTS AT THORNCREEK and THORNCREEK MANAGEMENT, LLC,<br><br>Defendants. | ) | Case No. 08 C 868<br><br>Hon. Wayne R. Anderson<br><br>**JURY DEMANDED** |

**DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT**
**<u>AND SPECIAL AND AFFIRMATIVE DEFENSES</u>**

Defendants, Thorncreek Apartments II, LLC d/b/a The Lofts at Thorncreek and Thorncreek Management, LLC (collectively, "Defendants"), by and through their attorneys, file their Answer to Plaintiff's Complaint and Special and Affirmative Defenses as follows:

## MATTERS COMMON TO MULTIPLE COUNTS

## INTRODUCTION

1. Plaintiffs Loretta Scott and Pearleatha Scott bring this action against defendants Thorncreek Apartments II, LLC d/b/a/ The Lofts at Thorncreek and Thorncreek Management, LLC ("Defendants") to secure redress for systematic and regular violations *of* Illinois laws protecting tenants against abuses by landlords.

**Answer**: Defendants deny the allegation and otherwise leave Plaintiffs to their proofs.

1626239.1

## PARTIES

2. Plaintiffs Loretta Scott and Pearleatha Scott ("the Scotts" or "plaintiffs") are individuals who from June 7, 2001 to August 31, 2007 resided in a townhome complex known as The Lofts At Thorncreek in Cook County, Illinois.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

3. The Scotts moved out of the townhome complex on or about August 31, 2007, and they currently live at 3012 Western Avenue in Park Forest, IL 60466.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

4. Defendant Thorncreek Apartments II, LLC is a Michigan corporation. Its business address is 36700 Grand River Avenue, Farmington Hills, Michigan 48355. Its registered agent and registered office are listed as: Michael E. Ross, 222 N. LaSalle Street, Suite 1910, Chicago, Illinois 60601, which is in Cook County.

**Answer**: Defendant Thorncreek Apartments II, LLC is a Michigan limited liability company. Admit that the business address is as set forth in Paragraph 4. Admit that Thorncreek Apartments II, LLC's registered agent's office is as set forth in Paragraph 4. Denied to the extent the allegation implies that Thorncreek Apartments II, LLC's principal business address is in Illinois.

5. Thorncreek Apartments II, LLC is the current owner of record of the apartment complex in which plaintiffs lived. It has been the owner for more than twelve years under a Quit Claim Deed dated January 30, 1995. Thorncreek Apartments II, LLC does business as The Lofts at Thorncreek.

**Answer:** Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

6. Thorncreek Management, LLC is the sole existing manager in Thorncreek Apartments II, LLC and directed its affairs with respect to the facts complained of here.

**Answer:** Denied because the allegation is not true.

## FACTS

7. The complex in which the plaintiffs resided is located around the intersection of Western Avenue and Indianwood Boulevard in Park Forest, Illinois ("complex").

**Answer:** Admit.

8. On information and belief, the complex contains 190 separate rental units.

**Answer:** Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

9. Defendants have filed more than fifty-one (51) civil eviction suits in Cook County against tenants of the complex in the past few years.

**Answer:** Defendants neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

10. The Scotts have leased two different townhome units in the complex over the past six years. Each year they renewed, plaintiffs signed new written leases. Plaintiffs did not sign leases at any other time.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

11. In the six years, plaintiffs have never defaulted on rent and have always paid the full amount of the rent for each month.

**Answer**: Denied because the allegation is not true.

12. Dinah Gonzalez was listed as the "Thorncreek managing agent" on the Scotts' sixth lease signed by the Scotts on May 30, 2006. The lease, as received by the Scotts, is attached herein as Exhibit A. This lease began on June 1, 2006 and was for 66 Indianwood Boulevard, Park Forest, Illinois.

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the documents referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

13. Defendants did not sign the lease until June 5, 2006, which is 4 days after the start date of the lease.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

14. The Scotts paid a $335 refundable security deposit. Their monthly rent was $950.00.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

15. Defendants never paid the Scotts any interest on their security deposit during plaintiffs' six years of tenancy with defendants.

**Answer**: Denied because the allegation is not true.

16. Defendants accepted plaintiffs' rent payment of $950.00 during the months of June 2007 and July 2007 and never informed plaintiffs, either orally nor in writing, that rent increased and plaintiffs were carrying a balance.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

17. On or about July 31, 2007, plaintiffs received a letter, attached here as Exhibit B, from defendants stating plaintiffs could save money by paying the account in full by July 30, 2007.

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the correspondence referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

18. Plaintiffs repeatedly called defendants to discuss the letter but were told the property manager, Dinah Gonzalez, was not available. Unsatisfied with defendants' response, plaintiffs visited Dinah Gonzalez in her office on July 31, 2007 to discuss the letter.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

19. On July 31, 2007, Ms. Gonzalez for the first time and only verbally notified plaintiffs that rent had increased on June 1, 2007 to $1050.00 and plaintiffs owed that difference for June and July of 2007. Defendants also informed plaintiffs that plaintiffs owed $60.00 for June 2007 and $60.00 for July 2007 for month to month charges. Prior to this verbal notice, defendants had never verbally nor in writing given plaintiffs notice of the rent increase.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

20. On July 31, 2007, unsatisfied with the management and the rent increase, plaintiffs gave defendants plaintiffs' 30 day notice to terminate tenancy and vacate the unit.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

21. On or about August 7, 2007, plaintiffs wrote defendants a letter, attached herein as Exhibit C, disputing the rent increase and that plaintiffs owed defendants any additional rent for June, July, and August of 2007. The letter also again noted plaintiffs' prior 30 day notice to terminate tenancy and vacate the unit.

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the correspondence referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

22. On or about August 13, 2007, defendants sent plaintiffs a letter, attached herein as Exhibit D, alleging that $690.00 was still due in back rent.

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the correspondence referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

23. On or about August 29, 2007, plaintiffs sent defendants another letter, this time notarized, attached herein as Exhibit E, disputing the rent increase and alleged default in rent payment.

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the correspondence referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

24. On or about August 31, 2007, plaintiffs vacated their unit in the complex.

**Answer:** Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

25. On or about September 18, 2007, defendants sent plaintiffs a disposition of security interest, herein attached as Exhibit F, which applied plaintiffs' security deposit to alleged unpaid rent and cleaning fees. The disposition of security interest also alleged that plaintiffs owed defendants a balance of $1, 738.85.

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the documents referenced. Otherwise, Defendants

can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

26. Plaintiffs were not in default on their lease at the end of any of their twelve-month rental periods

**Answer**: Denied because the allegation is not true.

27. Many other tenants of defendants' complex also faced increased rent with no prior written or verbal notice of any rent increase.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

28. Many other tenants of defendants' apartments also had to pay security deposits and did not receive interest on their security deposits on an annual basis.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

29. Plaintiffs moved units on June 1, 2003 because the basement in the first unit was flooding due to leaks in the floor foundation and because plaintiffs could afford a bigger apartment.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

30. Plaintiffs' 66 Indianwood Boulevard basement. Plaintiffs' second unit with defendants, was in horrible condition for all four years that plaintiffs resided in said unit. The basement floor's foundation had leaks and soaked many of plaintiffs' boxes. As a result, plaintiffs lost many items stored in the

basement. In addition, the basement walls were moldy and turned black because of the mold. Plaintiffs complained to defendants about the leaks. Defendants did nothing to repair these conditions.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

31. Many other tenants of defendants' complex also endured leaky and moldy basements.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

32. Plaintiffs' 2006 lease state:

> Lessee shall deposit with Lessor the above-described SECURITY DEPOSIT to secure the faithful and timely performance of each and every covenant and provision of this lease, and covenants to maintain the entire SECURITY DEPOSIT with the Lessor until the termination of this lease. Interest shall accrue on the SECURITY DEPOSIT and shall be paid by Lessor to Lessee as required by law...Lessee agrees that the SECURITY DEPOSIT shall not be considered an advance payment of MONTHLY RENT, additional rent or any other amount due from Lessee under this lease and that Lessee shall at no time apply said deposit to payment of any MONTHLY RENT, additional rent or any other amount due from Lessee under this lease.

Exhibit A ¶ 2

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the documents referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

33. The lease defendants used is a standard form. It mentions that interest shall be paid "as required by law."

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the documents referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

34. Defendants only paid plaintiffs security deposit interest on 9/18/07. See Exhibit F. However, defendants used this interest against alleged unpaid rent payments.

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the documents referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

35. At no other time have defendants paid or credited plaintiffs with interest on plaintiffs' security deposit.

**Answer**: Denied because the allegation is not true.

36. On information and belief, at no time have defendants paid or credited other tenants of the complex with interest on their security deposits as required by law.

**Answer**: Denied because the allegation is not true.

37. Plaintiffs' 2006 lease states:

> Lessee hereby agrees to...or (II) continue to occupy the Premises on a month-to month basis pursuant to the terms and conditions of this Lease expect that the Monthly Rent shall be as specified in a written notice from Lessor to Lessee and in the absence of any such notice from Lessor, at the then current MONTHLY RENT....in the event that Lessee desires to terminate the month-to-month tenancy, Lessee shall...give written notice to Lessor of Lessee's election to vacate the Premises on the date specified in such notice, which date shall be no earlier than thirty (30) days

> after the date Lessor receives Lessee's written notice of Lessee's election to terminate the month-to-month tenancy.
>
> Exhibit A 1129

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the documents referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

38. Plaintiffs' 2006 lease states:

> Lessee covenants and agrees that in the event Lessee fails to vacate the Premises upon the termination of this lease or upon the termination of Lessee's right to possession...(b) The Lessee's continued occupancy shall be for a month-to-month term at a monthly rental which shall equal the MONTHLY RENT reserved herein plus an additional amount specified by Lessor in written notice to Lessee, or in the absence of any such notice from Lessor at the then current MONTHLY RENT.
>
> Exhibit A II 30

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the documents referenced. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

39. Plaintiffs' 2006 lease states:

> Whenever possible, each provision of this lease shall be interpreted in such manner as to he effective and valid under applicable law...if any provision of this lease conflicts with governing statutory law, the latter shall prevail.

**Answer**: Defendants deny this allegation to the extent that it inaccurately or incompletely characterizes the documents referenced. Otherwise, Defendants

can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

40. Plaintiffs' lease terminated on May 31, 2007.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

41. Defendants never gave plaintiffs written notice of the rent increase. Defendants only verbally informed plaintiffs of the rent increase on July 31, 2007 when plaintiffs inquired about the alleged nonpayment of rent and an alleged outstanding balance.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

42. Plaintiffs paid $950.00, the stated monthly rent in the 2006 lease, as rent for June 2007, July 2007, and August 2007.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

43. On July 31, 2007, plaintiffs gave defendants a 30 day notice to vacate 66 Indianwood Boulevard, Park Forest, Illinois.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

44. Plaintiffs vacated the premises on or before August 31, 2007.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

45. Defendants charged plaintiffs for alleged unpaid rent, late fees associated with alleged unpaid rent, and fees associated with a month to month tenancy.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

46. On information and belief, defendants have charged other tenants who have not received written notices of the rent increase for unpaid rent, late fees associated with the alleged unpaid rent, and fees associated with a month to month tenancy.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

**COUNT I --- SECURITY DEPOSITION INTEREST ACT**

47. Plaintiffs incorporate by reference paragraphs 1-46.

**Answer**: Defendants restate responses 1-46 as if each such response were restated in its entirety.

48. Defendants are "lessors" within the meaning of the Illinois Security Deposit Interest Act ("ISDIA'"), 765 ILCS 715/0.01 et seq. See Kutcher v. Barry Realty, Inc., 362 Ill. App. 3d 756, 761-62 (1st Dist. 2005) (defining a "lessor" to be one who "lets a property by lease" and therefore holding a management company liable under the ISDIA as an agent to an undisclosed principal, namely the owner).

**Answer**: The allegation is not factual in nature and calls for a legal conclusion for which no response is required. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

49. The ISDIA requires lessors of residential real property containing 25 or more units to "pay interest to the lessee computed from the date of the deposit . . . on any deposit held by the lessor for more than 6 months." 765 ILCS 715/1.

**Answer**: The allegation is not factual in nature and calls for a legal conclusion for which no response is required. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

50. Furthermore, the Security Deposit Interest Act states as follows:

> § 1. A lessor of residential real property, containing 25 or more units in either a single building or a complex of buildings located on contiguous parcels of real property, who receives a security deposit from a lessee to secure the payment of rent or compensation for damage to property shall pay interest to the lessee computed from the date of the deposit at a rate equal to the interest paid by the largest commercial bank, as measured by total assets, having its main banking premises in this State on minimum deposit passbook savings accounts as of December 31 of the calendar year immediately preceding the inception of the rental agreement on any deposit held by the lessor more than six months.
>
> § 2. The lessor shall, within 30 days after the end of each twelve month rental period, pay to the lessee any interest, by cash or credit to be applied to rent due, except when the lessee is in default under the terms of the lease.
>
> A lessor who willfully fails or refuses to pay the interest required by this Act. shall, upon finding by a circuit court that he has willfully failed or refused to pay. be liable for an amount equal to the amount of the security deposit, together with court costs. and reasonable attorney's fees.
>
> 765 ILCS 715/1-2.

**Answer**: The allegation is not factual in nature and calls for a legal conclusion for which no response is required. Otherwise, Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

51. The leased premises were in a complex of contiguous buildings containing more than 25 units.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

52. Defendants willfully failed or refused to pay the interest required by the Security Deposit Interest Act to plaintiffs and the class members.

**Answer**: Denied because the allegation is not true.

53. This claim is brought on behalf of a class.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

54. The class consists of all natural persons;

a. Who leased from defendants an apartment;

b. And gave a security deposit to defendants;

c. Which defendants held for more than six months;

d. And on which interest was not paid as required by the ISDIA:

e. At any point within two years prior to the filing of this action.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

55. The class is so numerous that joinder of all members is impracticable.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

56. On information and belief, there are at least 190 persons who leased from defendants an apartment located in the complex and who gave a security

deposit to defendants, on which interest was not paid as required by the ISDIA.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

57. There are questions of law and fact common to the members of the class, which questions predominate over any questions affecting only individual class members. These questions include:

a. Whether it is the policy and practice of defendants not to pay interest on security deposits:

b. Whether the conduct of defendants was willful; and

c. Whether the conduct of defendants violated the Security Deposit.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

58. Plaintiffs will fairly and adequately represent the members of the class. Plaintiffs have retained counsel experienced in the prosecution of class actions, including class actions to enforce the obligations of landlords. The claims of plaintiffs and the claims of the class members are based on the same factual and legal theories.

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

59. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

a. Defendants have inflicted similar injuries to a large number of persons through a single course of conduct; and

b. Individual actions are not economical

**Answer**: Defendants can neither admit nor deny the allegation and otherwise leave Plaintiffs to their proofs.

Wherefore, Defendants request that this Court dismiss Count I with prejudice and enter judgment in favor of Defendants; award Defendants their costs and attorneys' fees; and enter such other relief as this Court deems appropriate.

**COUNT II --- BREACH OF CONTRACT**

60. Plaintiffs incorporate by reference paragraphs 1-46. This claim is against Thorncreek Apartments II, LLC only.

**Answer**: Defendant Thorncreek Apartments II, LLC ("Defendant Thorncreek II") restates responses 1-46 as if each such response were restated in its entirety. Otherwise, Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

61. Defendant violated the lease agreements by not providing written notice of rent increases to plaintiffs and then attempting to collect payment and late fees on the rent increases.

**Answer**: Denied because the allegation is not true.

62. Plaintiffs and other tenants suffered pecuniary injury as a result, in that they were charged improper rent increases and late fees.

**Answer**: Denied because the allegation is not true.

63. This claim is brought on behalf of a class.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

64. The class consists of all natural persons;

a. Who leased from defendant an apartment which required prior notice of rent increases;

b. And who had their rent increased without prior notice.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

65. The class is so numerous that joinder of all members is impracticable.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

66. On information and belief, there are more than 50 persons who leased from defendant an apartment, who had leases requiring advance notice of rent increases, and who were not notified of rent increases in writing.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

67. There are questions of law and fact common to the members of the class, which questions predominate over any questions affecting only individual class members. These questions include:

a. Whether it is the policy and practice of defendant to not give written notice of rent increase and then demand payment of the increased rent and late fees associated therewith;

b. Whether such conduct is a breach of contract.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

68. Plaintiffs will fairly and adequately represent the members of the class. Plaintiffs have retained counsel experienced in the prosecution of class actions, including class actions to enforce the obligations of landlords. The claims of plaintiffs and the claims of the class members are based on the same factual and legal theories.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

69. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

a. Defendant has inflicted similar injuries to a large number of persons through a single course of conduct; and

b. Individual actions are not economical.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

Wherefore, Defendants request that this Court dismiss Count II with prejudice, and enter judgment in favor of Defendants; award Defendants their costs and attorneys' fees; and enter such other relief as this Court deems appropriate.

## COUNT III --- BREACH OF WARRANTY OF HABITABILITY

70. Plaintiffs incorporate paragraphs 1-46. This claim is against Thorncreek Apartments II, LLC only.

**Answer**: Defendant Thorncreek II restates responses 1-46 as if each such response were restated in its entirety. Otherwise, Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

71. The townhome units and common areas of the complex are in a dilapidated and uninhabitable state, such as to constitute a breach of the implied warranty of habitability, Spring v. Little, 50Il1.2d 351, 280 N.E.2d 208 (1972). The basements of the units have moldy, black walls and leaky floors' foundations which soak the tenants' belongings.

**Answer**: The allegation is not factual in nature and calls for a legal conclusion for which no response is required. Otherwise, the allegation is denied because it is not true.

72. This claim is brought on behalf of a class. The class consists of all persons who were tenants of the complex at any time after a date five years prior to the filing of this action.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

73. Plaintiffs allege on information and belief that the class is so numerous that joinder of all members is impractical

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

74. On information and belief, there are more than 100 persons who were tenants of the complex at any time after a date five years prior to the filing of this action, who experienced flooding in their units.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

75. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. The principal issues are:

a. Whether defendant breached the implied warranty of habitability;

b. The appropriate relief.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

76. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling class actions and actions involving unlawful landlord-tenant practices. Neither plaintiffs nor plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

77. Plaintiffs' claims are based on the same facts and legal theories as those of the class members.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

78. A class action is appropriate for the fair and efficient adjudication of the controversy, in that:

a. Individual actions are not economically feasible;

b. Judicial economy will result from a class action.

**Answer**: Defendant Thorncreek II can neither admit nor deny the allegation and otherwise leaves Plaintiffs to their proofs.

Wherefore, Defendants request that this Court dismiss Count III with prejudice, and enter judgment in favor of Defendants; award Defendants their costs and attorneys' fees; and enter such other relief as this Court deems appropriate.

## DEFENDANTS' AFFIRMATIVE AND SPECIAL DEFENSES TO PLAINTIFFS' COMPLAINT

1. This Court does not have subject matter jurisdiction over Plaintiffs' claims.

2. This Court does not have personal jurisdiction over the Defendants.

3. Venue is not proper in this Court.

4. The representative Plaintiffs, Loretta Scott and Pearleatha Scott, do not have standing to assert the claims on behalf of the purported class.

5. Plaintiffs have failed to state a claim upon which relief may be granted.

6. Plaintiffs are not in privity with one or more of the Defendants.

7. Plaintiffs have no contract with one or more of the Defendants.

8. Plaintiffs' Complaint is so vague and ambiguous that it requires a more definite statement.

9. Plaintiffs' claims are barred by the applicable statute of limitations.

10. Plaintiffs' claims are barred by the statute of frauds.

11. Plaintiffs' claims are barred by waiver, laches, equitable and/or promissory estoppel.

12. Plaintiffs agreed to accept the risk of personal property damage for any neglect or gross neglect of Defendants.

13. The risk to Plaintiffs was open and obvious.

14. Plaintiffs have no cognizable damages.

15. Defendants did not cause Plaintiffs' damages, if there are any.

16. Plaintiffs' damages, if there are any, were caused by the acts, errors, and/or omissions of third parties other than Defendants.

17. Plaintiffs' own negligence, breaches, and inequitable conduct caused Plaintiffs' alleged damages, in whole or in part.

18. Plaintiffs' claimed damages are subject to set-off for alleged amounts owed by Plaintiffs to Defendants.

19. Plaintiffs have failed to mitigate damages, if there are any.

20. Plaintiffs' actions have led to spoliation of evidence.

21. One or more Defendants do not owe Plaintiffs a duty.

22. Defendants did not breach a duty owed to Plaintiffs.

23. Defendants did not breach a warranty owed to Plaintiffs.

24. Plaintiffs do not own the property that is alleged to be in violation of a habitability warranty.

25. The area alleged to be affected by Plaintiffs is a common area.

26. Plaintiffs' equitable claims should be barred to the extent of Plaintiffs own inequitable conduct and unclean hands.

27. Plaintiffs' equitable claims would not be remedied by the relief Plaintiffs seek.

28. Plaintiffs' equitable claims are unreasonable as a matter of law.

29. Plaintiffs are not a class under law.

30. Plaintiffs cannot demonstrate that without joinder of the purported class the Plaintiffs' respective claims would be impractical.

31. Plaintiffs cannot demonstrate that the issues of the purported class are so common that the issues predominate over the issues of the individual class members.

32. Plaintiffs cannot demonstrate that they will fairly and adequately protect the interests of the purported class.

33. The individual class members' interests are separate and distinct.

34. The class members' interests are adverse to each other.

35. Joinder of the class is not feasible.

36. The joinder of this class may expose Defendants to multiple lawsuits and multiple exposure.

37. Defendants reserve the right to amend their Answer to assert such additional Special/Affirmative Defenses as shall become known to them during the course of discovery.

Respectfully submitted,

SICILIANO MYCHALOWYCH
VAN DUSEN AND FEUL, PLC

By: Lindsay James by RKH

Andrew W. Mychalowych
(Michigan Bar Number 36902)
Lindsay James
(Michigan Bar Number 66778)
37000 Grand River Avenue, Suite 350
Farmington Hills, MI 48335
248.442.0510
248.442.0518 (facsimile)
Attorneys for Defendants

Dated: February 15, 2008

1626239.1

## CERTIFICATE OF SERVICE

On February 15, 2008, I served the attached **Defendants' Answer to Plaintiff's Complaint and Special and Affirmative Defenses** by U.S. Mail, postage prepaid, to:

Daniel A. Edelman
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603

Ryan K. Harding