**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LORETTA SCOTT and PEARLEATHA SCOTT,<br><br>Plaintiffs on behalf of themselves and others similarly situated,<br><br>v.<br><br>THORNCREEK APARTMENTS II, LLC D/B/A THE LOFTS AT THORNCREEK and THORNCREEK MANAGEMENT, LLC,<br><br>Defendants. | ) | Case No. 08 C 868<br><br>Hon. Wayne R. Anderson |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Defendants, through their undersigned counsel, file this response in opposition to Plaintiff's Motion to Remand:

1. Admitted on information and belief that Plaintiffs, on behalf of a purported class, filed a Complaint in the Circuit Court of Cook County, on or about January 3, 2008. Also admitted, generally, that Plaintiffs allege that Defendants violated the Illinois Security Deposit Interest Act; that Defendants allegedly raised and overcharged rent in breach of lease agreements; and that Defendants allegedly breached implied warranties of habitability (through alleged improper maintenance of apartments and common areas; by allegedly allowing and not remediating water intrusion and water damage; by allegedly allowing and not remediating black mold; and by allegedly soaking and destroying untold amounts of personal property). The allegations have been denied.

2. Admit.

3. Admit that Defendants sought removal to this Court on February 8, 2008. As to the balance of the allegation, the same is generally admitted, although the Notice of Removal speaks for itself.

4. The burden of proving that jurisdiction exists generally rests with the party asserting it; here, that is the Defendants. In 2006, the Seventh Circuit Court of Appeals published the proper legal standard for determining whether a case meets the jurisdictional minimum for the amount in controversy when a plaintiff objects to the propriety of removal:

> [A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed.

*Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir., 2006) (internal citation omitted).

The *Meridian* Court also held that defendant's proofs may take any number of reasonable forms, including:

> by calculation from the complaint's allegations by reference to the plaintiff's informal estimates or settlement demands or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.

*Meridian*, 441 F.3d at 541-42 (internal citations omitted).

In terms of how to measure value, the *Meridian* Court held:

> [T]his demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant).

*Meridian*, 441 F.3d at 542. This is also true in class actions, where a class has a common and undivided interest in injunctive relief. *See* Loizon v. SMH Societe Suisse de Microelectronics, Et Horologerie SA, 950 F.Supp. 250, 254 (N.D.Ill., 1996); McCarty v. Amoco Pipeline Co., 595 F.2d 389, 395 (7th Cir., 1979).

5. Denied. Defendants submit that Plaintiffs' claims may exceed $5 million from the standpoint of Defendants' costs in terms of complying with the relief Plaintiffs seek.

a. COST TO RECONSTRUCT OR REMEDIATE THORNCREEK.

Attached hereto is the Affidavit of Clay Travis. **Exhibit 1**.[1] He has been in the construction business for over thirty years and has been involved in a supervisory capacity for hundreds of housing, apartment, and condominium projects at all phases throughout the country, including new builds, remodeling, restoration, and reconstruction. He is an expert who is personally familiar with the Lofts at Thorncreek, having inspected the same, and is very familiar with Thorncreek's construction and the structural foundation of the units, including the basements.

Defendants incorporate the sworn statements of Mr. Travis entirely. But in summary, Mr. Travis' expert opinion is that because of the allegations

[1] The attached Affidavit of Mr. Travis, although signed, is not notarized. Mr. Travis was traveling, and due to the limited time to file an answer, the Affidavit attached hereto was not notarized. Defendants anticipate being able to file a signed and notarized Affidavit tomorrow, March 18, 2008, along with proving Mr. Travis' *curriculum vitae*.

levied by Plaintiffs, the breadth of the relief Plaintiffs seek, and due to the age of Thorncreek and the fact that Thorncreek sits on a flood plane, what Plaintiffs seek would "almost certainly require demolishing Thorncreek and building a new complex." **Ex. 1**, ¶¶4-7. Mr. Travis opines that the construction would cost in excess of $10 million. **Ex. 1**, ¶7. Mr. Travis also opines that even if remediation were possible, it would cost in excess of $5 million. **Ex. 1**, ¶8. And that in either case, the construction would last between one and two years, requiring the ouster of Thorncreek tenants during the reconstruction/remediation phase. **Ex. 1**, ¶¶ 9-10.

Furthermore, while Plaintiffs do not specify what the alleged damages are to *common* areas, in the worst case, remediation of those areas could be in the millions of dollars.

b. <u>ECONOMIC RAMIFICATIONS TO THORNCREEK</u>

Attached hereto is the Affidavit of David Clapper. **Exhibit 2**.[2] He is a principal of Defendant Thorncreek Management, LLC, which is the owner of Defendant Thorncreek Apartments II, LLC d/b/a The Lofts at Thorncreek.

Mr. Clapper has been in the real estate market for over thirty-five years, and his personal knowledge of these properties is extensive. **Ex. 2**, ¶¶ 4-6. As part of Thorncreek's business records, he has produced a March 2004 appraisal performed by Washington Mutual, which is Thorncreek's lender.

[2] The attached Affidavit of Mr. Clapper, although signed, is not notarized. Mr. Clapper was traveling, and due to the limited time to file an answer, the Affidavit attached hereto was not notarized. Defendants anticipate being able to file a signed and notarized Affidavit tomorrow, March 18, 2008,

Thorncreek appraised for $11 million. **Ex. 2(A)** (3/24/04 appraisal of Washington Mutual).

Mr. Clapper has testified that if he were required to do total reconstruction or remediation of Thorncreek consistent with what Mr. Travis outlined, and if Thorncreek were to be shut down for one to two years (as Mr. Travis testified) Thorncreek would be required to breach its leases with tenants and constructively evict its tenants, which will subject Thorncreek to scores of lawsuits and cost untold money damages (there are 190 units at Thorncreek). **Ex. 2**, ¶¶ 7-8.

Mr. Clapper has also produced, as part Thorncreek's business records, Thorncreek's most recent statement from Washington Mutual. The principal balance owed on the property is nearly $8.5 million. **Ex. 2(B)** (2/15/08 statement). Mr. Clapper has testified, based on his knowledge of the mortgage agreement and loan documents, that in an event of default, Thorncreek could either lose the property (and its equity in the same, its goodwill, and/or the business entirely) or would have to come up with millions of dollars to pay off its lender. **Ex. 2**, ¶ 9.

Mr. Clapper testified that without a revenue stream for not less than one year, there is no way Thorncreek can work out an arrangement with its lender where the lender would not foreclose on Thorncreek and call the outstanding balance on the loan. **Ex. 2**, ¶ 9. Mr. Clapper testified, based on the books and records of Thorncreek with which he is familiar, that given the financial

condition of Thorncreek, this is not something Thorncreek can afford. **Ex. 2**, ¶ 9.

Mr. Clapper further testified that even if Thorncreek could somehow avoid foreclosure by not paying the mortgage, Thorncreek would have no revenue stream to pay operating expenses, utilities, and taxes for up to two years. **Ex. 2**, ¶ 10. The property would waste, would not be able to operate, and would be subjected to state tax liens for failure to pay taxes. He testified that these, too, would likely be defaulting events with Thorncreek's lender, resulting in the same problems outlined above. **Ex. 2**, ¶ 10.

Plaintiffs also demand the appointment of a receiver (apparently to oversee the reconstruction of Thorncreek). "The appointment of a receiver is an extraordinary and drastic remedy and is appropriate only in cases of urgent necessity." *Witters v. Hicks*, 335 Ill.App.3d 435, 440; 780 N.E.2d 713 (Ill.App. 5 Dist., 2002) (in the context of interpreting Illinois' Business Corporations Act). Although it is difficult to quantify, suffice it to say that appointing a receiver would impose significant burdens on the management and operations of the property. This could also cause a defaulting event under the mortgage and loan documents, because the bank may argue that its interests would be materially compromised.

### C. ACTUAL DAMAGES TO BE PAID BY THORNCREEK

Plaintiffs make demand for damages as a consequence of Defendants allegedly violating the Illinois Security Deposit Interest Act (ISDIA) and allegedly breaching tenant leases.

i. Regarding the ISDIA action, Plaintiffs assume a deposit of $335.00 deposit for each of the 190 renters, and come to a figure of $63,650. There are, however, as admitted by Plaintiffs, *at least* 190 renters going back through the statutory limitations period whom Plaintiffs seek to represent. **Complaint**, ¶56. In fact, there are hundreds of current and former tenants. Most were required to pay a security deposit. And if none have been paid interest as Plaintiffs appear to contend, then under the statute, each tenant would be entitled to the full amount of the security deposit as damages, together with court costs and attorney fees (The latter can be considered by a court in determining the jurisdictional amount (whatever costs and fees are to date)). Suffice it to say, Defendants could be ordered to pay amounts well in excess of $63,650.

ii. Regarding the rent issue, Plaintiffs allege that Defendants may be ordered to pay Plaintiffs damages as high as $456,000.00 (based on alleged overcharging of $2,400 multiplied by 190 renters). This, again, assumes that the number of affected renters is limited to the number of units at Thorncreek (190). As stated above, there are hundreds of current and former tenants from Thorncreek within the statutory limitations period that Plaintiffs seek to represent. Damages could be closer to a million dollars.

iii. Plaintiffs' Motion does not address the value of the personal property allegedly damaged ("soaked") as a result of the alleged leaks, water intrusion, and mold. The named Plaintiffs, the Scotts, allege that they "lost many items stored in the basement" as a result of the alleged breach of the

implied warranty of habitability. **Complaint**, ¶30. Plaintiffs seek to certify a class making similar allegations. **Complaint**, ¶¶71-78.

If Plaintiffs and the class are no longer making a claim for damages to personal property, Defendants gladly accept that stipulation. If, however, Plaintiffs and the class are making such claims, and if there are at least 190 class members --- with at least 190 sets of personal belongings allegedly damaged or destroyed, the aggregate damages could easily be in the millions (e.g., clothing, exercise equipment, photo albums, keepsakes, televisions, furniture, etc.) --- these damages could arguably approach or be in the millions. Defendants submit that it cannot be "legally certain" that such damages could not approach those amounts.

6. Denied for the reasons set forth supra in Paragraph 5(c)(i).

7. Denied for the reasons set forth supra in Paragraph 5(c)(ii).

8. Denied for the reasons set forth in Paragraph 5(a-b) and 5(c)(iii). Plaintiffs' speculation that the property is not worth more than $5,000,000.00 is not supported with evidence, and is inconsistent with Washington Mutual's appraisal and the testimony of Mr. Travis and Mr. Clapper.

9. Denied for all the reasons set forth above, as this action could have been originally filed in this Court pursuant to 28 U.S.C. § 1332(d)(2), because the parties are diverse and the amount in controversy exceeds $5 million.

Plaintiffs' statement that the issues presented here would be governed by Illinois law is not reason to resist jurisdiction. If cases fit within federal courts' jurisdiction, federal courts have an "unflagging obligation . . . to

exercise the jurisdiction given them"; and only in the rarest of circumstances can federal courts resist jurisdiction prescribed by Congress. *See*, *e.g.*, Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). In fact, accepting Plaintiffs' argument would wipe out Section 1332 jurisdiction entirely.

WHEREFORE, Defendants request that this Court deny Plaintiffs' Motion to Remand; or, alternatively, Defendants request that this Court order a briefing schedule and set this matter for hearing in order to allow Defendants to fully brief the matter for the Court.

SICILIANO MYCHALOWYCH
VAN DUSEN AND FEUL, PLC
By:___*/s/ Andrew W. Mychalowyc*h_______________
Andrew W. Mychalowych
(Michigan Bar Number 36902)
Lindsay James
(Michigan Bar Number 66778)
37000 Grand River Avenue, Suite 350
Farmington Hills, MI 48335
248.442.0510
248.442.0518 (facsimile)
Amychalowych@smvf-law.com
Ljames@smvf-law.com
Attorneys for Defendants

Dated: March 17, 2008

**CERTIFICATE OF SERVICE**

On March 17, 2008, I served **Defendants Response in Opposition to Plaintiff's Motion to Remand** on Daniel A. Edelman, Esq. and Rupali Shah, Esq., attorneys for Plaintiffs, by filing the same with this Court's ECF filing system. A courtesy copy of the same was mailed to the Chambers of the Honorable Wayne R. Anderson.

____*/s/ Lindsay James*______________
Lindsay James

Dated: March 17, 2008