**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LORETTA SCOTT AND<br>PEARLEATHA SCOTT,<br><br>Plaintiffs, on behalf of themselves and others similarly situated,<br><br>v.<br><br>THORNCREEK APARTMENTS II, LLC d/b/a/ THE LOFTS AT THORNCREEK and THORNCREEK MANAGEMENT, LLC,<br><br>Defendants. | ) | Case No. 08 C 868<br><br>Hon. Wayne R. Andersen |

**<u>PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO REMAND</u>**

Plaintiffs Loretta Scott and Pearleatha Scott submit the following reply in support of their motion to remand and respectfully ask the Court to enter an order remanding this action to state court pursuant to 28 U.S.C. §1441(c).

## I. DEFENDANTS ADMIT THAT THIS COURT <u>HAS NO JURISDICTION OVER THIS CASE</u>

Under 28 U.S.C. §1332(d)(2), "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which- (A) any member of a class of plaintiff is a citizen of a State different from any defendant...."

In their Opposition to Plaintiffs' Motion To Remand, defendants correctly note that proving jurisdiction rests with the party asserting it, in this case, the defendants. (Defendants Motion ¶ 4). However, defendants are contesting the jurisdiction of this Court at the

same time they are attempting to prove it has jurisdiction.

In their affirmative and special defenses to the complaint, defendants assert that this Court does not have subject matter jurisdiction over plaintiffs' claims. See Exhibit A. Defendants are absolutely correct in their assertion. The claims in the complaint are brought under purely state law: the Illinois Security Deposit Interest Act, and common law breach of contract and breach of the warranty of habitability claims. The property at issue is located in Illinois, and all of the class members reside in Illinois.

Defendants should be not be allowed to simultaneously advance contradictory positions on jurisdiction. Because jurisdiction can be addressed at any time, and ordinary principles of estoppel do not apply to the issue of jurisdiction[1], defendants could remove this case, and later seek to have it remanded on jurisdictional grounds if they are unhappy with this Court's rulings. As it is clear that this Court lacks jurisdiction over this case, and defendants have asserted the same in their affirmative defenses, this Court should grant plaintiffs' motion for remand.

## II. THE DAMAGES SOUGHT IN THIS CASE DO NOT EXCEED FIVE MILLION DOLLARS.

Defendants allege that the remedies the plaintiffs seek would require the defendants to tear down all of Thorncreek, ouster existing Thorncreek tenants, and rebuild the entire complex. (Defendants' Motion ¶ 5). Defendants further allege that the cost of providing such relief would far exceed $5 million. However, at the same time, defendants assert in their

[1] Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 72 (1982).

affirmative defenses that plaintiffs lack standing.

A review of the facts indicates that defendant is probably correct with respect to plaintiffs' standing to request injunctive relief and the appointment of a receiver. As stated in the complaint, plaintiffs no longer reside at the Lofts of Thorncreek. As former tenants, they have standing to seek monetary damages, but most likely cannot obtain injunctive relief. Defendants were well aware of that fact, as is evidenced by their affirmative defenses, but apparently saw plaintiffs' inadvertent inclusion of injunctive relief and request for a receiver in the prayer for relief as a vehicle to have this case removed to Federal Court.

Plaintiffs agree that their request for injunctive relief can be dismissed with prejudice; it was not their intent to displace their former neighbors or to require defendants to rebuild the entire complex as defendants' experts contend would be necessary to stop all flooding.[2] Their primary goal in filing this lawsuit was to obtain monetary damages for themselves and the class, and to motivate defendants to change their practices with respect to security deposits and rent increases.

It is clear from defendants' submissions that without the request for injunctive relief, the class members' possible damages do not come close to five million dollars. Initially, plaintiffs note that although defendants, unlike plaintiffs, have the information available in their computer system regarding how many people are actually in the various classes, defendants fail to submit any concrete numbers regarding class size. Defendants' insistence on relying on

[2] Plaintiffs hope that their case will improve matters for future and current tenants, as its filing should cause defendants to consider (1) revealing the flooding problem to prospective tenants in advance so they do not store valuable items in their basements, and (2) taking whatever steps are actually practical to ameliorate the problem.

speculation when they should have the hard data suggests that the actual numbers do not support defendants' position, and plaintiffs' motion for remand should be granted.

Defendants complain that plaintiffs did not include former tenants in their calculations of security deposit damages. However, even assuming that there were three times more tenants in the class than plaintiffs estimated (which would represent an astounding turnover rate given the two year statute of limitations), damages for violating the SDIA would still be under $200,000 (3 X $63,650=$190,950). Moreover, in addressing how many tenants are eligible for statutory damages, defendants overlook the fact that tenants who were in default are not eligible for damages under the SDIA. A significant number of the tenants who no longer reside in the complex undoubtedly left due to a default and are therefore not entitled to any damages. Defendants also overlook the fact that not all of the units were occupied. Defendants' own Summary Appraisal Report states that there was a 5% vacancy rate in 2004, with an 8% vacancy rate forecast. Exhibit 2A to Defendant's Opposition to Motion to Remand.

Defendants also complain that plaintiffs' estimate of damages for the breach of contract claim might be too low because there could have been more tenants during the class period. In so doing, defendants start with the high end of plaintiffs' damage estimate, and ignore the fact that subtractions in the number of class members due to defaults and vacancies will probably cancel out the additions due to turnover. Moreover, plaintiffs suggest that the lower end of their initial damage estimate should be used ($1,200), not the higher end, because even that figure is probably high.

Plaintiffs' breach of contract claim alleges that defendants' imposed a rent increase without proper notice. The damages for such a breach would be the difference between

the original rent and the increased rent, and any late charges which were incurred as a result of the tenant paying the original rental amount. In plaintiff's case, the increase was $160 per month. Late fees were $40 per month. Those damages would stop running when the tenant agreed to a new lease, or when the tenant elected to vacate the complex rather than continuing to pay the increased rent, as plaintiffs did after only three months. Although plaintiffs were aware of other individuals having similar problems, they expect that the class of people subjected to this practice is smaller than the classes in the other counts.[3] Defendants do not explain why they are assuming that every single tenant who resided in the complex was subjected to this practice, nor do defendants submit evidence that they imposed improper rent increases on every single tenant (and once again, defendants are in possession of this information, not plaintiffs).

Finally, defendants' arguments regarding actual damages for tenants' belongings are nonsensical. It is unlikely that the tenants stored highly valuable possessions in the basement, and it is also unlikely that every single tenant lost possessions.[4] If that had been the case, numerous tenants would have already sued defendants for the loss of these belongings. Moreover, used household items generally do not have a large value. In plaintiffs' case, the damaged and lost items include clothing and other belongings, whose value did not exceed $500. Even if 250 people lost $1,000 each worth of items, defendant's exposure would only be $250,000.

In short, it is clear that defendants' maximum exposure on the damage claims

---

[3] The complaint alleges that, on information and belief, there were more than 50 people subjected to this practice. (Cmpt. ¶66)

[4] The complaint alleges that, on information and belief, there were more than 100 people damaged due to the habitability issues. (Cmpt. ¶74)

cannot possibly approach five million dollars. Even if generous assumptions are made concerning the number of class members and the amount of average damages, defendants' exposure does not appear to even exceed one million dollars.

**CONCLUSION**

For the reasons stated above, and in their motion to remand, plaintiffs respectfully request the Court to enter an order remanding this action to state court.

Respectfully submitted,

/s/ Tara L. Goodwin

Tara L. Goodwin

Daniel A. Edelman
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)